**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 97-2142

_____

Nancy Kelley,                                    *
                                                 *
            Appellant,                           *
                                                 *   Appeal from the United States
      v.                                         *   District Court for the Southern
                                                 *   District of Iowa.
John J. Callahan, Acting Commissioner,           *
Social Security Administration,                  *
                                                 *
            Appellee.                            *

_____

Submitted: October 23, 1997
Filed: January 7, 1998

_____

Before MCMILLIAN, FLOYD R. GIBSON, and BEAM, Circuit Judges.

_____

BEAM, Circuit Judge.

     Nancy Kelley appeals the district court's affirmance of a denial of Social Security benefits. Because the record does not contain substantial evidence to support the findings of the Administrative Law Judge (ALJ), we reverse and remand for further proceedings.

## I.    BACKGROUND

Kelley is fifty-three years old.  She was previously employed as a telephone line repair person and a telephone repair dispatcher.  She has one year of junior college. She suffers from a history of lupus,[1] fibromyalgia,[2] chest pain, ulcers, irritable bowel syndrome, high cholesterol, pain due to a pronated ankle, and atypical heart pain.

In November 1992, Kelley's employer downsized and Kelley's position as a dispatcher was eliminated.  At that time, several people were offered positions with the company in another town.  Kelley was not offered a job.  She was told that her excessive absenteeism was the reason.  She had missed twenty-seven days of work in about five months.  Kelley testified that these absences were due to illness and her employer did not dispute that fact.  Before her job was eliminated, Kelley's employer had accommodated her health problems by allowing her to lie down several times a day on a cot that had been provided for her.  Kelley testified that she would have received a pension if she had been able to continue working for three more years.

On May 20, 1993, Kelley applied for disability benefits alleging that she has been disabled since November 20, 1992.  Her application was denied both initially and on reconsideration.  She then requested a hearing before an ALJ.

---

[1]Lupus, also known as systemic lupus erythematosus (SLE) is "a chronic, remitting, relapsing, inflammatory, and often febrile multisystemic disorder of connective tissue, acute or insidious in onset, characterized principally by involvement of the skin, joints, kidneys, and serosal membranes."  See Dorland's Illustrated Medical Dictionary 964 (28th ed. 1994) (Dorland's).

[2]Fibromyalgia is muscle pain in fibrous tissues.  Stedman's Medical Dictionary 222 (4th ed. 1976).  It is a degenerative disease which results in symptoms such as achiness, stiffness, and chronic joint pain.  See Cline v. Sullivan, 939 F.2d 560, 567 (8th Cir. 1991).

At the hearing, Kelley testified that she is in almost constant pain in her shoulders, back and legs. She also suffers from exhaustion. She can only walk about half a block because of pain in her foot and ankle and cannot stand for very long. She testified that she can sometimes drive an hour and a half from her home to Des Moines for doctors' appointments, but that she has to stop and rest on the way. She usually stays overnight in Des Moines because she is unable to drive both ways in one day. She stated she can rarely sleep through the night because of pain. She has had to hire housecleaning help and is unable to do any gardening. Her adult children help her with the shopping. She is unable to handle the stress of having her grandchildren around. Several times a month she suffers from stomach sickness and vomiting as a result of an esophageal ulcer. She also suffers from a hiatal hernia that causes heartburn and loss of sleep. She testified that she has chest pain about six times a month. She also testified that she would be unable to sit for an hour without a break, and that even with a break, it would be painful for her to do so.

The medical evidence shows that Kelley has been treated for many years by five physicians: Dr. Dale J. Andringa, a general practitioner; Dr. M.G. Parks, a general practitioner; Dr. Theodore W. Rooney, a rheumatologist; Dr. Joel A. From, a cardiologist; and Dr. Bernard I. Leman, a gastroenterologist. Kelley first sought medical treatment for lupus in 1981. Her symptoms then included darkening of the palms of her hands, pleurisy-like[3] chest pains, joint aches, and rashes. At that time she had a positive ANA test,[4] and was treated for arthralgia[5] and left-sided pleuritic chest pain. She either contacted or was examined by Drs. Andringa and Parks, for various

---

[3]Pleurisy is an inflammation of the pleura, the serous membrane investing the lungs and lining the thoracic cavity. Dorland's at 1306-07.

[4]ANA stands for antinuclear antibodies. Antinuclear antibodies are directed against nuclear antigens; ANA are almost invariably found in systemic lupus erythematosus and are frequently found in rheumatoid arthritis, scleroderma, and mixed connective tissue diseases. Dorland's at 93

[5]Arthralgia is pain in a joint. Dorland's at 140.

complaints, including myalgia[6] and back pain, over one hundred additional times between 1980 and 1992.  Dr. Parks stated in 1993 that Kelley's "physical capacity is limited," and suggested environmental limitations, particularly avoidance of cold or damp conditions.  He stated she was "unable to stand or walk for long periods of time due to the legs hurting."  He also found that "[w]hen she attempts to sit, she has significant pain in her back and [is] unable to sit due to the pain."  He further found her unable to stoop, crawl, or kneel due to pain in her lower extremity joints and found that she had difficulty in handling objects because of significant joint pain in her hands.

Kelley visited Dr. Rooney numerous times beginning in 1987.  At that time he reported a "longstanding history of upper and low back pain" and a "history of SLE (systemic lupus erythematosus) without evidence of significant target organ involvement."  He noted that the SLE had been inactive for six years.  His findings were "suggestive with the periarticular trigger points of fibromyalgia and soft tissue myofascial strain."  In 1990, he wrote that Kelley could not "walk 200 feet without assistance" and that this was a permanent condition.  In 1992, he again noted fibromyalgia, with radicular right leg pain.  In 1993, he wrote that, due to multiple tender points, Kelley "is going to be somewhat limited in her ability to perform certain activities."  An MRI of Kelley's back showed mild degeneration of the L5 and S1 discs, probable mild arthropathy, and noncompressive central protrusion.  Dr. Rooney completed a disability checklist and indicated that Kelley would not be able to work more than a four-hour day.

Dr. From, a cardiologist, wrote in 1993 that it would be difficult for Kelley "to do standing, walking, sitting, stooping, climbing, kneeling, and crawling due to her leg brace and becoming fatigued attempting to do these different positions."  He further stated, "[d]ue to her continual angina symptoms, it would not be advisable for her to

---

[6]Myalgia is pain in a muscle or muscles.  Dorland's at 1085.

be in very cold or very warm temperatures or exposed to dust, fumes, or other hazards." Dr. From advised Kelley to stop smoking.

Kelley's records were reviewed by several consultative physicians, none of whom examined Kelley. Those doctors questioned Kelley's SLE diagnosis and concluded that she was not disabled.

A vocational expert also testified at the hearing. He was asked in a hypothetical question to assume a worker had possible lupus erythematosus, fibromyalgia, chest discomfort and a braced left foot. He was also asked to assume she could occasionally lift twenty pounds, frequently lift ten pounds, could stand for one hour and sit for two hours, could walk one hour, could occasionally climb, bend, stoop, squat, twist, kneel, and crawl, but that she could not use left foot controls or be exposed to extremes of heat or cold. He testified this person could perform the duties of a telephone repair dispatcher. In a second hypothetical, he was asked whether a person with a ten-pound weight limitation and a half-hour limitation on sitting could perform the functions of a dispatcher and he answered "no." Similarly, he stated that a person with a four-hour workday limitation could not perform the dispatcher functions.

After the hearing, the ALJ found that Kelley was not under a disability as defined in the Social Security Act and denied her application. The ALJ discounted Kelley's complaints of pain and fatigue as inconsistent with objective findings. She found Kelley was not credible, noting "[i]t is anyone's guess whether [Kelley's] absences were medically necessary or just job 'burnout.' Lack of motivation does not qualify one for disability. There is no support that this claimant's absences were medically necessary." She concluded, "[t]he undersigned can only conclude that Ms. Kelley failed to go to work whenever she did not 'feel' like it" and "[w]hether or not the absenteeism is related to her illness or a lackadaisical nature has not been established." She found the opinion of Dr. Rooney, Kelley's treating rheumatologist, was not persuasive, in part because he had not hospitalized Kelley. The ALJ also put great weight on Kelley's

failure to quit smoking, although doctors had advised her to do so. The ALJ thus found that Kelley's impairments would not prevent her from returning to her past work as a dispatcher. The Appeals Council affirmed the decision, as did the district court.

## II.    DISCUSSION

We will affirm the ALJ's findings if supported by substantial evidence on the record as a whole. See Matthews v. Bowen, 879 F.2d 422, 423-24 (8th Cir. 1989). Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a decision. See Lawrence v. Chater, 107 F.3d 674, 676 (8th Cir. 1997). The review we undertake is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from the decision. See Cline v. Sullivan, 939 F.2d 560, 564 (8th Cir. 1991).

To receive disability benefits, Kelley must establish a physical impairment lasting at least one year that prevents her from engaging in any gainful activity. See Ingram v. Chater, 107 F.3d 598, 600 (8th Cir. 1997). The Commissioner utilizes the familiar five-step sequential evaluation to determine disability under which he determines:  1) whether the claimant is presently engaged in a "substantial gainful activity;" 2) whether the claimant has a severe impairment--one that significantly limits the claimant's physical or mental ability to perform basic work activities; 3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); 4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and 5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. See id.

The ALJ found that Kelley suffered from severe impairments including a history of lupus, fibromyalgia, chest discomfort, and a need to wear a brace on her left foot, but that she did not have an impairment that met the presumptively disabling listings. She found "the testimony of the claimant, her son and daughter could not be afforded full credibility due to numerous inconsistencies in the record as a whole." She thus found Kelley retained the residual functional capacity to perform work-related activities except for work involving lifting more than twenty pounds occasionally or ten pounds repeatedly. She found Kelley could stand for one hour and sit for one hour with the usual breaks and that she should be able to move if needed. She also found Kelley could occasionally climb, bend and stoop. The ALJ limited Kelley's exposure to extremes of heat or cold. With those restrictions, the ALJ found that Kelley could return to her former work, noting that her past relevant work did not require the performance of any activities precluded by the limitations.

In arriving at that conclusion, the ALJ discredited Kelley's testimony regarding the extent of her pain. When assessing the credibility of a claimant's subjective allegations of pain, the ALJ must consider the claimant's prior work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When an ALJ rejects a claimant's complaints of pain, he or she must make an express credibility determination detailing reasons for discrediting the testimony, must set forth the inconsistencies, and must discuss the Polaski factors. See Cline, 939 F.2d at 565. In this case, the ALJ did not adequately detail the inconsistencies that she relied upon to disbelieve Kelley's testimony.

The ALJ first stated that Kelley had not provided documentation for her many absences and speculated that she "failed to go to work whenever she did not 'feel' like it." Kelley was not required to document her absences. She testified that she missed work because she was sick and there is nothing in the record to suggest that this was

not the case. Her employer conceded that her absences were legitimate. The record is replete with evidence of her many illnesses and doctor visits.

The ALJ also discredited Kelley's complaints of pain because she had continued working for several years in spite of her limitations. Kelley testified that she continued working for as long as she could in an effort to be eligible for her pension. The presumption that a claimant is not disabled merely because the claimant had a lenient employer, a high tolerance for pain, or no other means of support would unfairly shift the burden of proof back onto the claimant at a point in the proceedings when the burden rightfully belongs on the Commissioner. See Cline, 939 F.2d at 566. The record shows that Kelley's continued employment was only through the good graces of her employer. The accommodations that the employer offered Kelley serve to corroborate her testimony regarding her pain and fatigue. Her largely passive work responsibilities are not inconsistent with her testimony regarding her pain and with the medical evidence that describes a degenerative condition.

We find that Kelley's daily activities are also consistent with her complaints of disabling pain. Uncontroverted evidence shows that Kelley is unable to perform many of the daily activities she once enjoyed. She testified that although she is able to take care of her daily needs, she needs help with housework and shopping. This court has repeatedly stated that a person's ability to engage in personal activities such as cooking, cleaning, and hobbies does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity. See Hogg v. Shalala, 45 F.3d 276, 278 (8th Cir. 1995).

Although a claimant's allegations of disabling pain may also be discredited by evidence that the claimant has received minimum medical treatment and/or has taken only occasional pain medications, such is not the case with Kelley. See Cline, 939 F.2d at 568. Again, the record shows numerous visits to doctors. She testified that she

takes many prescription medications.[7] She has availed herself of many pain treatment modalities, including a TENS unit, physical therapy, trigger point injections of cortisone, chiropractic treatments, and nerve blocks. In addition, she has had several surgeries and many diagnostic tests, including X-rays, CT scans, DNA tests, MRIs, and blood work.

In addition to discrediting Kelley's complaints, the ALJ also disregarded the opinions of Kelley's treating physicians and instead credited the opinions of consultative physicians who had not examined Kelley. A treating physician's opinion is generally entitled to substantial weight, although it is not conclusive and must be supported by medically acceptable clinical or diagnostic data. See Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996). The Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist. See Metz v. Shalala, 49 F.3d 374, 377 (8th Cir. 1995). The opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence. See id. at 378. Here, Kelley's treating physicians' diagnoses are amply supported by clinical data. Kelley's principal diagnosis at present is fibromyalgia and that diagnosis is clinically supported by the trigger point injections. Fibromyalgia, which is pain in the fibrous connective tissue components of muscles, tendons, ligaments, and other white connective tissues, can be disabling. See Cline, 939 F.2d at 567. It often leads to a distinct sleep derangement which often contributes to a general cycle of daytime fatigue and pain. See id. at 563.

The ALJ also rejected Kelley's treating physician's four-hour day restriction. The assumption that physicians cannot opine as to the hours a claimant can work is wrong. See Smallwood v. Chater, 65 F.3d 87, 89 (8th Cir. 1995). Physicians regularly make

---

[7]These include Premarin, Zocor, Tagamet, Lozol, Dilacor, Amitriptyline, Metoclopramide, Ketoprofen, and Nitrostat.

such assessments.  See id.  In fact, medical opinions on how much work a claimant can do are not only allowed, but encouraged.  See id.  A vocational expert must then take into account medical limitations, including opinions on work time limits, and offer an opinion on the ultimate question whether a claimant is capable of gainful employment. See id.  The opinion of a treating specialist controls if it is well supported by medically acceptable diagnostic techniques and is not inconsistent with the other substantial evidence.  See id.  As noted above, Dr. Rooney's recommendation is supported by medically acceptable diagnostic techniques and is not inconsistent with the other medical testimony or Kelley's testimony.

The ALJ also emphasized Kelley's failure to quit smoking as a reason to deny benefits.  Impairments that are controllable or amenable to treatment do not support a finding of disability, and failure to follow a prescribed course of treatment without good reason can be a ground for denying an application for benefits.  See Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997).  Although Kelley's cardiologist advised her to quit smoking, he did not state that her smoking was the cause of her problems or that her complaints would be relieved by quitting smoking.  Although she would undoubtedly improve her general health and well-being by doing so, there is no evidence that her musculoskeletal complaints would be affected.  Under the circumstances of this case, we are reluctant to deny benefits solely because of Kelley's failure to quit smoking.

## III.   CONCLUSION

The ALJ improperly evaluated Kelley's subjective complaints of pain and failed to give proper weight to the opinions of  her treating physicians.  Accordingly, we reverse the judgment.  However, because the ALJ concluded that Kelley could return to her prior work, no proper record was developed regarding whether the Commissioner can meet his burden of showing that there are other jobs in the national economy that Kelley can perform.  Accordingly, the judgment is reversed and this case

is remanded to the district court with directions to remand it to the Commissioner for further proceedings consistent with this opinion.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT