**Debra J. DANIEL, Plaintiff,**

v.

**Larry G. MASSANARI, Acting Commissioner of the Social Security Administration, Defendant.**

No. 4:01CV3061.

United States District Court, D. Nebraska.

Oct. 10, 2001.

Glen A. Murray, Truell, Murray Law Firm, Grand Island, NE, for Plaintiff.

Ellyn Grant, Assistant United States Attorney, Omaha, NE, for Defendant.

## MEMORANDUM AND ORDER

KOPF, District Judge.

This is a social security appeal. Debra J. Daniel (Daniel) appeals, contending, among other things, that an Administrative Law Judge (ALJ) erred when the judge failed to find Daniel's fibromyalgia to be severe. In a closely related argument, the claimant also asserts that the ALJ improperly discounted Daniel's testimony about disabling pain by ignoring the opinions of a treating physician regarding fibromyalgia. I will reverse and remand this case for further consideration.

## I. BACKGROUND

Because fibromyalgia is not well known, but an understanding of the disease is helpful to a proper resolution of this case, a description of the illness is a proper starting point. As Judge Beam has explained, "[f]ibromyalgia ... is pain in the fibrous connective tissue components of muscles, tendons, ligaments, and other white connective tissues...." *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir.1998) (the ALJ erred in disregarding treating physician's diagnosis of fibromyalgia). It "can be disabling." *Id.*

This illness is a "chronic disorder." National Institutes of Health, *The Neuroscience and Endocrinology of Fibromyalgia* (1996), *available at* http:www.niams.nih.gov/ne/reports/sci___wrk/1996/fibrosho.htm. Fibromyalgia "is characterized by widespread musculoskeletal pain, fatigue, and multiple tender points." *Id.* Judge Posner has observed that one of the principal symptoms of fibromyalgia is that the patient has

"multiple tender spots ... that when pressed firmly cause the patient to flinch[,]" there are "18 fixed locations on the body" where such tender spots may occur, "and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia...." *Sarchet v. Chater,* 78 F.3d 305, 306, 307 (7th Cir.1996) (reversing decision of ALJ because of the judge's "pervasive misunderstanding of the disease").

In addition to these painful "tender points," people with this syndrome "may also experience sleep disturbances, morning stiffness, irritable bowel syndrome, anxiety, and other symptoms." National Institutes of Health, *The Neuroscience and Endocrinology of Fibromyalgia* (1996), *available at* http:www.niams. nih.gov/ne/reports/sci_wrk/ 1996/fibrosho. htm. The illness "affects 3 to 6 million Americans, and occurs primarily in women of childbearing age." *Id.*

### A.

Although the ALJ's written opinion stated that Daniel based her claim upon "depression, gastritis, and status two hip surgeries[,]" the plaintiff made clear to the ALJ during questioning that her doctor had "[d]iagnosed me with fibromyalgia." (Tr. 53.) In fact, "fibromyalgia" was part of her "main diagnosis." (Tr. 53.) The "bursitis" that had driven the surgery was the other part of her "main diagnosis." (Tr. 53.)

The decision of the ALJ was rendered on April 23, 1999. (Tr. 30.) The ALJ found that Daniel, who was then a 39 year old female, had satisfied the insurance requirements. (Tr. 29.) Daniel had not worked since December 30, 1996. (Tr. 29.) The ALJ believed that Daniel had one "severe impairment" which did not equal or exceed the listing of impairments. (Tr. 29.)

That lone severe impairment was described as a "status post resection of the left trochanteric bursa." (Tr. 29.) Essentially, she had her left hip operated upon twice in 1997 (Tr. 25) to relieve pain caused by bursitis. (Tr. 23.) Daniel told R.L. Pomajzl, M.D., that she obtained no relief from the surgeries. (Tr. 23.)

In October 1, 1997, after the two surgeries had been completed, Dr. Pomajzl stated that Daniel "could not do any long term or extended sitting, standing, or traveling," that "lifting and carrying would be limited to less than 10 pounds occasionally" and "the claimant would not be able to handle any type of manual labor." (Tr. 23.) Because the limitations were based upon Daniel's "subjective complaints," the ALJ assigned "little weight" to Dr. Pomajzl's opinion. (Tr. 23.)

The ALJ described the fact that Dr. David W. Swift, M.D., a specialist in rheumatology, had treated Daniel over a number of years. (Tr. 25.) The ALJ described some of Dr. Swift's findings. (Tr. 25.) Strangely, however, the ALJ did not recognize or discuss Dr. Swift's then most recent diagnostic impressions. (Tr. 25.) By June of 1998, Dr. Swift was of the opinion that Daniel suffered from fibromyalgia, chronic trochanteric bursitis for which she had undergone a bursectomy and muscle resection, and irritable bowel symptoms.[1] (Tr. 379).

Although the ALJ recognized that Daniel testified that she "was in pain all the time, needs to nap, and cannot sit for eight hours or stand for eight hours," the ALJ discounted that testimony. (Tr. 27.) As a

---

1. Dr. Swift noted that Daniel had earlier received "a couple trials of steroid injections" and those "caused intense worsening or her

bowel symptoms including bloody diarrhea." (Tr. 379.)

result, and after hearing the views of a vocational expert, the ALJ concluded that Daniel could do her past relevant work as cashier, a packager, and general office clerk.[2] (Tr. 29.) However, when asked, the vocational expert testified that if Daniel's claim of disabling pain was credible "she would not be able to work." (Tr. 73.)

### B.

Daniel appealed. Before the Appeals Council, she was allowed to submit additional evidence. (Tr. 6 (Exhibit List).) Among other things, she submitted additional information from Dr. Swift. For the time period between when he first began to treat Daniel and the date of the ALJ's decision, Dr. Swift stated that Daniel did "meet the American Rheumatological criteria for fibromyalgia." (Tr. 421.)

Specifically, Swift stated that Daniel was "credible" and not a "malingerer." (Tr. 422, 423.) Although she "probably" could tolerate a "low stress job" (Tr. 423), the doctor believed that Daniel would "often" experience "pain sufficiently severe to interfere with attention and concentration." (Tr. 422.) Medical findings supported these complaints of pain. (Tr. 422.) That is, Daniel displayed "tenderness to palpation at multiple fibromyalgia points." (Tr. 422.)

As to her physical ability to work, the doctor thought Daniel needed a job which allowed her to shift positions at will from sitting, standing or walking. (Tr. 424.) She would also sometimes need to lie down or rest at unpredictable intervals during an 8 hour day. (Tr. 424.) She would be absent "more than four times a month." (Tr. 424.)

The doctor noted that Flexeril, a drug used to treat fibromyalgia, "makes her de-

pression symptoms worse." (Tr. 423.) Another medication "made abdominal pain worse." (Tr. 423.)

Daniel also submitted two statements that Dr. Swift had made to the State of Nebraska Department of Social Services. (Tr. 426–427; 443–444.) The earlier statement indicated that Daniel had "moderate to severe" limitations on her ability to work. (Tr. 427.) The later statement indicated that Daniels had "total limitations" in her ability to work "with limited functions in the workplace." (Tr. 444.) In these reports, Dr. Swift described the anticipated duration of the fibromyalgia to be either "Chronic" (Tr. 426) or "Chronic Lifetime." (Tr. 443.)

 The Appeals Council considered all of this information. (Tr. 7; 9.) Nevertheless, the appeal was denied. (Tr. 7.) Because the Appeals Council considered the newly provided information from Dr. Swift, and because a material portion of Dr. Swift's new information related to the time period under consideration by the ALJ (Tr. 421), that additional data must be considered as if it had been available to the ALJ. *Riley v. Shalala,* 18 F.3d 619, 621 (8th Cir.1994).

### II. ANALYSIS

Among other arguments, Daniel asserts that the ALJ erred by failing to find that she suffered from a "severe" impairment in the form of fibromyalgia and that the ALJ further erred in discounting her claim of disabling pain regarding that illness. Because I have a more fundamental problem with the ALJ's decision, I do not reach those arguments.

---

**2.** Despite the fact that Daniel was treated for and diagnosed with depression, the ALJ found that problem was not "severe." (Tr. 24; 29 (finding 3).) Although it is not entirely clear,

the ALJ also apparently found that the gastritis claim was not severe either. (Tr. 23–25; 29 (finding 3).)

■ Despite the fact that at least one medical record that clearly stated Dr. Swift's diagnosis of fibromyalgia had been presented to the ALJ (Tr. 4 ("Documents Received at the Hearing"); 379) and such a diagnosis apparently corroborated Daniel's complaints of pain, depression and bowel problems, the ALJ failed to address the doctor's diagnosis. This is perplexing because there is little or no evidence in the record that directly contradicts such a diagnosis. More importantly, as the ALJ failed to acknowledge the existence of Dr. Swift's diagnosis, I cannot evaluate the strength or weakness of the ALJ's decision. Simply put, I do not know what the ALJ thought about Dr. Swift's diagnosis because the ALJ did not discuss it.

As Judge Posner recognized in a similar case, "the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet*, 78 F.3d at 307 (reversing decision to deny disability benefits for fibromyalgia and remanding the case for reevaluation of the evidence). When such a "bridge" is lacking, "the Social Security Administration will have to take another look." *Id.* at 309. *See also Kelley*, 133 F.3d at 589 (reversing denial of benefits and remanding where ALJ improperly disregarded a treating doctor's principal diagnosis of fibromyalgia).

Because the depression complaint is interwoven with the fibromyalgia issue, the allegation of disabling depression will need to be reconsidered as well. A treating psychiatrist linked Daniel's diagnosed depression and her ability to work as turning upon whether she could "tolerate[ ] her fibromyalgia." (Tr. 446.) Thus, in order to properly evaluate the severity of the depression and Daniel's claim of disabling depression, a proper evaluation of the fibromyalgia complaint is required as well.

The same thing is true for the claim of gastroenteritis or similar complaints. As earlier indicated, Dr. Swift suggested a relationship between the fibromyalgia and Daniel's intestinal problems. (Tr. 379.) Such a relationship is not uncommon when fibromyalgia is diagnosed. National Institutes of Health, *The Neuroscience and Endocrinology of Fibromyalgia* (1996), *available at* http:www.niams.nih.gov/ne/reports/sci—wrk/1996/fibrosho.htm.

In conclusion, I will reverse the decision appealed from and remand this case for a proper reevaluation all of Daniel's claims. In particular, the ALJ shall take care to directly address Dr. Swift's opinions regarding the fibromyalgia issue. Accordingly,

IT IS ORDERED that judgment will be entered by separate document for the plaintiff and against the defendant reversing the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g) (sentence four) and remanding this case for further proceedings consistent with the opinion of the court.

## JUDGMENT

JUDGMENT is entered for the plaintiff and against the defendant reversing the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g)(sentence four) and remanding this case for further proceedings consistent with the opinion of the court.