**Judie SWAIN, Plaintiff,**

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant.**

No. 5:01–CV–1407.

United States District Court,
N.D. Ohio,
Eastern Division.

Sept. 12, 2003.

Dianne R. Newman, Sternberg, Newman & Shifrin, Akron, OH, for Plaintiff.

Michael A. Johnson, Office of the U.S. Attorney, Cleveland, OH, for Defendant.

## MEMORANDUM OPINION AND ORDER

BAUGHMAN, United States Magistrate Judge.

### Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the application of the plaintiff, Judie Swain, for disability insurance benefits. The parties have consented to the jurisdiction of the Magistrate Judge.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Swain had severe impairments consisting of Crohn's disease, fibromyalgia, an adjustment disorder, and pain.[1] The ALJ made the following finding regarding Swain's residual functional capacity:

> The claimant maintains the maximum residual functional capacity for work-related activities with the following limitations and restrictions based upon substantial evidence: Light work as defined in the Social Security rules and regulations; access to bathroom facilities; no high stress; and no high quotas or high production goals. Also the claimant requires ready access to a bathroom. (20 CFR 404.1545)[2]

The ALJ determined that the above-quoted residual functional capacity would not preclude Swain from performing her past

1. Transcript ("Tr.") at 29.

2. *Id.* at 30.

relevant work as a waitress or ceramic machine operator.[3]

Alternatively, the ALJ posed a hypothetical question to the vocational expert at the hearing setting forth the residual functional capacity quoted above, with the modification of an exertional capability for only sedentary work.[4] In response to that hypothetical question, the vocational expert testified that a significant number of jobs existed nationally and locally that the hypothetical person could perform.[5]

Swain asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, she complains that the ALJ did not give sufficient weight to the opinion of her treating physician and that the residual functional capacity finding should have included additional limitations. Finally, she maintains that with appropriate additional limitations, the testimony of the vocational expert supports a finding that a significant number of jobs did not exist nationally and locally that she could perform.

The Court concludes that the ALJ's reasons for not giving controlling weight to the opinion of Swain's treating physician do not have the support of substantial evidence in the record. Furthermore, giving proper weight to the treating physician's opinion, the hypothetical posed to the vocational expert may not have accurately set forth the full extent of Swain's limitations. This case, therefore, must be remanded for further proceedings.

On remand, the ALJ should fully articulate his reasons for discounting Swain's credibility, because the articulation in the decision currently under review is not adequate.

## Analysis

At issue on this appeal is Swain's claim of disability on account of pain caused by her fibromyalgia condition. As previously stated, the ALJ accepted Swain's claim that she suffers from fibromyalgia and determined that her condition constituted a severe impairment.

### 1. Pain as the cause of disability

■ When a claimant presents pain as the cause of disability, the decision of the Sixth Circuit in *Duncan v. Secretary of Health and Human Services*[6] provides the proper analytical framework. The Court in *Duncan* established the following test:

> [t]here must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.[7]

Under the first prong of this test, the claimant must prove by objective medical evidence the existence of a medical condition as the cause for the pain. Once the claimant has identified that condition, then under the second prong he or she must satisfy one of two alternative tests—either that objective medical evidence confirms the severity of the alleged pain or that the medical condition is of such severity that the alleged pain can be reasonably expected to occur.[8]

3. *Id.*

4. *Id.* at 68–69.

5. *Id.* at 69–70.

6. *Duncan v. Sec'y of Health & Human Servs.,* 801 F.2d 847 (6th Cir.1986).

7. *Duncan,* 801 F.2d at 853.

8. *Felisky v. Bowen,* 35 F.3d 1027, 1039 (6th Cir.1994).

██ Objective medical evidence of pain includes evidence of reduced joint motion, muscle spasm, sensory deficit, or motor disruption.[9] The determination of whether the condition is so severe that the alleged pain is reasonably expected to occur hinges on the assessment of the condition by medical professionals.[10] Both alternative tests focus on the claimant's "alleged pain." [11] Although the cases are not always clear on this point, the standard requires the ALJ to assume arguendo pain of the severity alleged by the claimant and then determine if objective medical evidence confirms that severity or if the medical condition is so bad that such severity can reasonably be expected.

A claimant's failure to meet the *Duncan* standard does not necessarily end the inquiry, however. As the Social Security Administration has recognized in a policy interpretation ruling on assessing claimant credibility,[12] in the absence of objective medical evidence sufficient to support a finding of disability, the claimant's statements about the severity of his or her symptoms will be considered with other relevant evidence in deciding disability:

> Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's state-

ments if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.[13]

The regulations also make the same point.

> We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work ... solely because the available objective medical evidence does not substantiate your statements.[14]

██ Where the objective medical evidence does not substantiate the claimant's subjective complaints, the ALJ must pass on the credibility of the claimant in making those complaints.[15] The ALJ's findings as to credibility are entitled to deference because he has the opportunity to observe the claimant and assess her subjective complaints.[16]

The regulations set forth factors that the ALJ should consider in assessing credibility. These include the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; and treatment or measures, other than medication, taken to relieve pain.[17] If

---

9. *Id.* at 1037 (quoting 20 C.F.R. 404.1529(c)(2)).

10. *Walters v. Comm'r of Social Security,* 127 F.3d 525, 531 (6th Cir.1997).

11. *Duncan,* 801 F.2d at 853.

12. Social Security Ruling (SSR) 96–7p, Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed.Reg. 34483 (July 2, 1996).

13. *Id.* at 34484.

14. 20 C.F.R. § 416.929(c)(2).

15. *Walters,* 127 F.3d at 531.

16. *Buxton,* 246 F.3d at 773.

17. 20 C.F.R. 416.929(c)(3)(i)-(vi).

the ALJ rejects the claimant's complaints as incredible, he must clearly state his reasons for doing so.[18]

## 2. Fibromyalgia and pain analysis

Fibromyalgia is an "elusive" and "mysterious" disease.[19] It has no known cause and no known cure.[20] Its symptoms include severe musculoskeletal pain,[21] stiffness,[22] fatigue,[23] and multiple acute tender spots at various fixed locations on the body.[24]

The presence of these tender spots are the primary diagnostic indicator of the disease.[25] There is no laboratory test for the disease's presence or severity.[26] Physical examinations usually yield normal findings in terms of full range of motion, no joint swelling, normal muscle strength, and normal neurological reactions.[27]

Because of the nature of fibromyalgia and its manifestations, application of the usual disability analysis is difficult. The first alternative test under the second prong of *Duncan*—medical evidence confirming the severity of the alleged pain—almost never exists.

Analysis is also hampered under the second alternative test—the medical condition is of such severity that the alleged pain can reasonably be expected to occur. In most cases, the analysis under this second alternative test will consist of diagnostic findings confirming the severity of the impairment and the opinion of a physician as to limitations that pain caused by such severity will impose. Since the presence and severity of fibromyalgia cannot be confirmed by diagnostic testing, the physician's opinion must necessarily depend upon an assessment of the patient's subjective complaints.[28]

This places a premium, therefore, in such cases on the assessment of the claimant's credibility. Although the treating physician's assessment can provide substantial input into this credibility determination, ultimately, the ALJ must decide, given the factors set out in the regulations, if the claimant's pain is so severe as to impose limitations rendering her disabled. For purposes of judicial review, the ALJ's articulation of the reasons supporting his credibility findings becomes very important.

## 3. Substantial evidence does not support the ALJ's finding of the weight to be given to the opinion of the treating physician.

■ With respect to fibromyalgia and the pain caused thereby, the record contains the residual functional capacity assessment of Swain's treating physician, Michael Pellegrino, M.D.[29] The ALJ decided not to give that opinion controlling weight.[30]

18. *Felisky,* 35 F.3d at 1036.

19. *Sarchet v. Chater,* 78 F.3d 305, 306 (7th Cir.1996).

20. *Id.*

21. *Preston v. Sec'y of Health and Human Servs.,* 854 F.2d 815, 817 (6th Cir.1988).

22. *Id.; Sarchet,* 78 F.3d at 306.

23. *Id.*

24. *Preston,* 854 F.2d at 817; *Sarchet,* 78 F.3d at 306.

25. *Id.*

26. *Sarchet,* 78 F.3d at 306.

27. *Preston,* 854 F.2d at 818.

28. *Sarchet,* 78 F.3d at 306.

29. Tr. at 311–12.

30. *Id.* at 26–27.

In rejecting Dr. Pellegrino's opinion, the ALJ relied on the "traditional formula" for weighing opinions of treating physicians. That formula emphasizes support for the opinion by way of objective medical evidence.

While a treating source's opinion must be considered, the Administrative Law Judge is not bound by a treating source's conclusory statement concerning a claimant's maximum residual functional capacity. *Miller v. Secretary of Health and Human Services*, 843 F.2d 221, 224 (6th Cir.1988). The Administrative Law Judge may reject a treating source's conclusion concerning a claimant's maximum residual functional capacity when good reasons are identified for not accepting it. *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir.1988). Specifically, the Administrative Law Judge is not bound by a treating source's conclusion concerning a claimant's maximum residual functional capacity, especially when there is substantial objective medical evidence or other evidence to the contrary. *See Cohen v. Secretary of Dept. of Health and Human Services*, 964 F.2d 524, 528 (6th Cir.1992); *Young v. Secretary of Health and Human Services*, 925 F.2d 146, 151 (6th Cir.1990); *Hardaway v. Secretary of Health and Human Services*, 823 F.2d 922, 927 (6th Cir.1987).[31]

■ As explained above, fibromyalgia defies diagnosis by objective clinical, diagnostic, or laboratory findings. As fibromyalgia has become better understood, courts have come to recognize that the traditional formula used in this case is ill suited to testing treating physicians opin-

ions about the limitations caused by that disease.[32]

Recently the Second Circuit in *Green–Younger v. Barnhart* reversed a district court decision in a fibromyalgia case because the ALJ and the district court failed to give controlling weight to the assessment of a treating physician.[33] As an initial matter, the court rejected the Commissioner's arguments that the treating physician's opinion regarding the limitations caused by the claimant's fibromyalgia constituted an opinion on the ultimate issue of legal disability, an issue for determination by the ALJ.[34] Rather, the court concluded that the assessment regarding the claimant's inability to function at normal levels because of persistent severe pain, notably the limitation on her ability to sit or stand for long periods of time, constituted an opinion on the issue of the nature and severity of the claimant's impairments.[35] Under the regulations, such an opinion by the treating physician could be afforded controlling weight.[36]

The court then went on to reject the ALJ's finding that the treating physician's opinion did not have the support of sufficient medical evidence. In doing so, the court acknowledged that the medically acceptable clinical and laboratory diagnostic techniques for fibromyalgia are different from those applicable to other impairments.

Dr. Helfand's diagnosis of severe fibromyalgia and degenerative disc disease are "well supported by medically acceptable clinical and laboratory diagnostic techniques." Green–Younger exhibited

---

**31.** *Id.* at 27.

**32.** *E.g., Green–Younger v. Barnhart*, 335 F.3d 99, 106–09 (2d Cir.2003); *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir.1998).

**33.** *Green–Younger,* 335 F.3d 99.

**34.** *Id.* at 106.

**35.** *Id.* at 106–07.

**36.** *Id.*

the clinical signs and symptoms to support a fibromyalgia diagnosis under the American College of Rheumatology (ACR) guidelines, including primarily widespread pain in all four quadrants of the body and at least 11 of the 18 specified tender points on the body. See SSA Memorandum, Fibromyalgia, Chronic Fatigue Syndrome, and Objective Medical Evidence Requirements for Disability Adjudication, at 5 (May 11, 1998) (explaining that the signs for fibromyalgia, according to the ACR, "are primarily the tender points"); see also Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir.1996); Lisa v. Sec. of the Dep't of Health and Human Servs., 940 F.2d 40, 43 (2d Cir.1991). As noted earlier, Dr. Helfand documented that "[m]usculoskeletal and extremity exams reveal multiple tender points in the distribution characteristic of fibromyalgia." [37]

The Second Circuit criticized the ALJ for requiring " 'objective' evidence for a disease that eludes such measurement." [38] The court recognized that the ALJ's approach was out of step with the judicial trend of not requiring objective medical evidence to support a diagnosis of or an assessment of the limitations caused by fibromyalgia.

> Moreover, a growing number of courts, including our own, have recognized that fibromyalgia is a disabling impairment and that "there are no objective tests which can conclusively confirm the disease." Yet each of the ALJ's determinations turned on a perceived lack of objective evidence.[39]

The court was particularly critical of the ALJ's failure to acknowledge the treating physician's finding of the presence of tender points, "the primary diagnostic technique for fibromyalgia." [40]

The Second Circuit's Green–Younger decision relies heavily upon the decision of the Sixth Circuit in an earlier fibromyalgia case, Preston v. Secretary of Health and Human Services.[41] As explained above, the Sixth Circuit in Preston was one of the first courts to recognize that fibrositis, now more commonly known as fibromyalgia, defies diagnosis or assessment by traditional medical diagnostic techniques.[42] In Preston, as in Green–Younger, the Sixth Circuit reversed the district court because it found that the ALJ's rejection of the treating physician's opinion constituted reversible error. Given the nature of the disease, the Court concluded that the treating physician "had done all that can be medically done to diagnosis Preston's fibrositis and to support his opinion of disability." [43] The Court described in detail what the treating physician had done in support of his opinion.

> On the other hand, over a period of time Dr. Crabbs has done all that can be medically done to diagnose Preston's fibrositis and to support his opinion of disability. He referred Preston to a neurologist, orthopaedist, rheumatologist, and a psychologist for evaluation. He also referred Preston to physical therapy and a pain clinic for treatment. He observed that Preston's complaints of pain, stiffness and fatigue were classic symptoms of fibrositis. Moreover, even before Dr. Crabbs was able to pinpoint

---

37. *Id.* at 107.

38. *Id.* at 108.

39. *Id.* (citations omitted).

40. *Id.* n. 14.

41. *Preston v. Sec'y of Health & Human Servs.,* 854 F.2d 815 (6th Cir.1988).

42. *Id.* at 819–20.

43. *Id.* at 820.

fibrositis as the proper diagnosis, he was injecting cortisone or novocaine for relief into the parts of the body that he later learned were "focal tender points" characteristic of fibrositis patients. Given the circumstances of this case and the nature of this disease, Dr. Crabbs' systematic elimination of other diagnoses, identification of focal tender points, and observation of other classic symptoms of fibrositis satisfied the standard set forth in *Duncan, supra,* which requires objective medical evidence to confirm the severity of the pain arising from the condition or that the objectively established medical condition is of such severity that it can be reasonably expected to produce disabling pain.[44]

Dr. Pellegrino's opinion here meets the standards for according controlling weight to the opinions of treating physicians in fibromyalgia cases as set forth by the courts in *Green–Younger* and *Preston.* Dr. Pellegrino, whose specialty included the diagnosis and treatment of fibromyalgia, treated Swain continuously for over a year. His diagnosis revealed that Swain exhibited pain in 18 of the 18 trigger points characteristic of fibromyalgia.[45] His examinations revealed pain in all four quadrants of Swain's body.[46] Dr. Pellegrino treated Swain's fibromyalgia with physical therapy, medication, and B–12 injections.[47] None of these treatments gave her more than short-term relief. In summary, Dr. Pellegrino's diagnosis is well supported by medically acceptable clinical and laboratory diagnostic techniques suit-

able to the disease of fibromyalgia[48] and represents "all that can be medically done to diagnose [Swain's] fibrositis and to support his opinion of disability."[49]

As did the ALJs in *Green–Younger* and *Preston,* the ALJ here erroneously rejected Dr. Pellegrino's opinion for failing to provide "objective clinical, diagnostic and/or laboratory findings" and because that opinion was "not supported by the totality of the objective medical evidence or other evidence and is inconsistent with that evidence, and such a conclusion is only accorded great weight when it is supported by sufficient objective medical evidence or other evidence and is consistent with that evidence."[50] Most notably, in discussing Dr. Pellegrino's findings and opinion, the ALJ made no reference whatsoever to the treating physician's diagnostic finding that Swain exhibited multiple sore and painful tender areas including 18 of the 18 designated tender points for fibromyalgia. Rather, in his summary of Dr. Pellegrino's findings, he emphasizes normal physical and neurological findings, which are typical in fibromyalgia cases.[51] The ALJ's rejection of Dr. Pellegrino's opinion, therefore, is inconsistent with the legal standards applicable for determining the weight to be given to treating physicians' opinions in fibromyalgia cases and lacks the support of substantial evidence.

 Dr. Pellegrino's assessment included a number of limitations that the ALJ rejected—most notably, limitations on nev-

---

44. *Id.* at 820 (citation omitted).

45. Tr. at 246.

46. *Id.* at 247–49, 257–58, and 273.

47. *Id.* at 241–58, 267–74.

48. *Green–Younger,* 335 F.3d at 107.

49. *Preston,* 854 F.2d at 819.

50. Tr. at 27.

51. *Id.* at 23 (normal gait, no muscle atrophy, full range of motion, normal muscle strength, and normal neurological functions), 24 (no evidence of acute muscular or joint inflammation), 25 (no evidence of joint or muscle swelling, or of focal neurological deficits).

er climbing or crawling and only occasionally balancing, stooping, crouching, or kneeling.[52] He also found that Swain was limited in her ability to reach, push, and pull. None of the hypotheticals posed by the ALJ to the vocational expert incorporated these limitations.[53] Swain's attorney posed a hypothetical to the vocational expert that incorporated these additional limitations and also other non-exertional limitations that may or may not have the support of substantial evidence in the record.[54] In response to that hypothetical, the vocational expert indicated that Swain could not perform her past relevant work and that a significant number of jobs did not exist in the national economy that Swain could perform.[55]

Based upon this record, substantial evidence does not exist in support of a ruling at either step four or step five of the sequential evaluation process. This case must be remanded for reassessment of Swain's residual functional capacity, given appropriate weight to Dr. Pellegrino's opinion. Once a residual functional capacity finding has been made on remand, then an appropriate hypothetical or hypotheticals can be posed to a vocational expert in support of a disability determination at either step four or step five of the sequential evaluation process.

█ Since this case is being remanded, the ALJ should also reconsider his credibility finding. The ALJ found that Swain's allegations regarding the intensity, persistence, and function limiting effects of her pain were not substantiated by objective medical or other evidence and, therefore, not fully accepted.[56] As with the

assessment of the treating physician's opinion, the ALJ's assessment of Swain's credibility placed undue emphasis on the absence of objective medical evidence. This finding suffers the same defect of that in the *Green–Younger* case where the court criticized the ALJ for concluding "allegations of pain and functional limitations are found to be not entirely credible, particularly in light of the minimal objective findings."[57] As explained above, given the importance of credibility findings in fibromyalgia cases, the ALJ should reassess Swain's credibility giving due consideration to the need to go beyond objective medical evidence in properly evaluating such cases.

## Conclusion

Based on the foregoing, the Court concludes that the ALJ's residual functional capacity finding is not supported by substantial evidence. The Court, therefore, reverses the decision of the Commissioner to deny Swain disability insurance benefits and remands the case under sentence four of 42 U.S.C. § 405(g) for reconsideration of that finding, giving proper weight to the opinion of the treating physician, Michael Pellegrino, M.D.

On remand, the ALJ should also reassess his finding regarding Swain's credibility, giving due consideration to the limited value of objective medical evidence in assessing the severity of fibromyalgia.

For purposes of any potential application for attorney's fees under the Equal Access to Justice Act,[58] the Court con-

---

52. *Id.* at 312.

53. *Id.* at 68–69.

54. *Id.* at 71–72.

55. *Id.* at 73.

56. *Id.* at 30.

57. *Green–Younger,* 335 F.3d at 108.

58. 28 U.S.C. § 241(d).

cludes that the position of the Commissioner was substantially justified.

IT IS SO ORDERED.