BYE, Circuit Judge,
dissenting.
I disagree with the majority’s characterization of the evidence regarding Milam’s consistent absenteeism and the ALJ’s, at best, unclear resolution of the issue. I believe the case should be remanded to the ALJ for further development on the issue.
The Vocational Expert (‘YE”) testified that “in terms of an absenteeism, ... generally when you miss two days or 10 percent on a consistent basis[,] employers would not tolerate it; however, on[e] day a -month for [Milam’s position] for a long-term employee — employers would tolerate that.”[3] Milam immediately spoke up and said she “missed an average of three to five days a month” during her previous employment. The ALJ said he would “leave the record open for the absentee records” to determine how many days she missed on average and then based on her employment records would make a credibility determination as to how many days she actually missed. When Milam was unable to acquire her prior work records without a subpoena and requested a subpoena, the ALJ changed his mind and concluded that the issue was “not material to the resolution of her claim” because even if she missed three to five days per month, he did not believe based on the objective medical evidence that she had impairments that would cause her to njiss work at this rate. He believed, based on her impairments and pain, she would miss “1-2 days of work per month.” The district court recognized that the ALJ erred in finding Milam could still find work by having to consistently miss one to two days per month but found the error harmless because her prior employer accommodated her need for absences.
First, I think the ALJ erred in finding immaterial the issue of how many days Milam missed per month. If Milam would be expected to miss three to five days per month because of her pain from her impairments, it is undisputed she would be unemployable. In addition to Milam’s own reports of pain and need to miss three to five days of work per month during her prior employment, three of her former coworkers submitted letters explaining how much pain Milam was consistently in while at work and how much time she consistently missed. Her manager from 1988 to 1998 explained that Milam “consistently was forced to miss work and [was] many times in a great deal of pain while at *987 work.” She estimated that “[o]n average, [Milam] missed 1 to 2 days per month due to back pain.” She believed Milam “would have missed more, but many times, though suffering[,] she would force herself to come to work just to maintain her job.” A different manager provided that during the six years they worked together, Milam “was absent from work 3 to 5 days a month due to severe back pain.” During this time, her employer also “made special provisions for her in her work area in an attempt to alleviate some of her back pain and discomfort.” Her other co-worker also explained that during 2003 to 2010, she observed Milam in “severe back pain at work,” not being able to stand up straight, and sometimes in tears because of the pain. She stated that Milam would be asked to go home because of the pain an average of five working days per month, sometimes in three consecutive days. She also noted that her employer attempted to make her “work space as comfortable as possible for her,” including providing her with a “special desk that she could move her monitor up and down” and a “special chair.”
The ALJ disregarded all of this evidence and failed to develop the record further, all because he did not believe the objective, medical evidence before him would support a conclusion that Milam should miss so much time from work. It is undisputed, and the ALJ found, that Milam suffered from several back-related severe impairments. As detailed in the majority opinion, it is undisputed that she suffered continuing pain and received treatment for the pain, including injections, for many years as a result of these impairments. She need not be completely sedentary or often-hospitalized to find she lived with chronic pain, managing it as best she could. There is not substantial evidence in the record to support the ALJ’s conclusion that Milam’s impairments and pain would cause her to miss less than two days per month. See Douglas v. Bowen, 836 F.2d 392, 396 (8th Cir.1987) (“Any conclusion that [claimant] could work at a job without having more than one or two absences due to [her] various impairments is not supported by substantial evidence.”). Milam was “not required to document her absences[, s]he testified that she missed work because she was sick and there is nothing in the record to suggest that this was not the case.” Kelley v. Callahan, 133 F.3d 583, 588 (8th Cir.1998). Her employer not only “conceded that her absences were legitimate,” id., but three separate co-workers provided personal testimony of how severe her pain was and how many days she consistently missed over the course of many years. In light of the overwhelming evidence regarding her pri- or absenteeism, the absence of any reason to suggest she missed work for anything other than her pain, and the undisputed medical evidence of severe impairments and pain, I believe the ALJ erred. He should have, at the very least, developed the record further, as he initially stated he would. See, e.g., Godoua v. Colvin, 564 Fed.Appx. 876, 878 (8th Cir.2014) (“[I]t is ALJ’s duty to develop record fully and fairly during claimant’s proceedings, which are non-adversarial.”).
Second, as the district court acknowledged, putting the issue above aside, the ALJ concluded Milam’s residual functional capacity would cause her to miss one or two days per month, which was inconsistent with the VE’s testimony that missing two days per month would not be tolerated by any employer. In fact, the VE testified that only a long-term employer would tolerate consistent absences of one day per month. The ALJ did not explain how Milam could gain employment with a long-term employer, since her prior company no longer existed. Even if the ALJ concluded Milam would miss less than two days of work per month, it is unclear *988 whether Milam was employable if she were to miss more than one day but less than two days per month consistently. Regardless of how we interpret the ALJ’s statement, I agree with the district court that “an error was made.” I disagree with the district court, however, that the error was harmless.
The district court believed that although Milam could not secure future employment as generally found in the economy based on her absenteeism, she could find work “as she actually performed it in the past” because “her former employer made accommodations that allowed her to take off more than two days a month.” But the question of how she performed her work in the past relates to her job duties and functions — not how excessively accommodating her prior employer was. See 20 C.F.R. § 404.1560(b) (“We will first compare our assessment of your residual functional capacity with the physical and mental demands of your past relevant work.” (emphasis added)); 20 C.F.R. § 404.1520(f) (“If you can still do this kind of work.... ” (emphasis added)). The fact that her prior employer went out of its way to accommodate Milam cannot be used to contradict the VE’s undisputed testimony that no other employer would tolerate more than one absence per month on a consistent basis. The ALJ’s apparent finding that Milam would miss more than one day per month consistently was above the threshold the VE testified would be tolerated by any employer. In light of the undisputed testimony from the VE, I believe the ALJ erred in finding Milam could find employment if she were to consistently miss more than one day per month for a new employer.

. This testimony is consistent with testimony from vocational experts in past cases. See, e.g., Hacker v. Barnhart, 459 F.3d 934, 942 (8th Cir.2006) (Heaney, J., dissenting) (noting testimony from the vocational expert that "if Hacker missed more than two days of work per month, her absenteeism would render her unemployable”); Douglas v. Bowen, 836 F.2d 392, 396 (8th Cir.1987) (noting testimony from vocational expert that claimant would be unemployable if he "had an absentee rate in excess of one or two days a month” (emphasis added)).