**Corliss J. WILLIAMS, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF LABOR, Respondent.**

**No. 88–2121.**

United States Court of Appeals, Eighth Circuit.

Submitted March 17, 1989,

Decided July 7, 1989.

Thomas Mann, Jr., Des Moines, Iowa, for petitioner.

Denise M. Sudell, Washington, D.C., for respondent.

Before BOWMAN, Circuit Judge, and FLOYD R. GIBSON and HEANEY, Senior Circuit Judges.

FLOYD R. GIBSON, Senior Circuit Judge.

Corliss Williams petitions for review of a decision of the Secretary of Labor that Williams's CETA employer did not discriminate against her on the basis of race when it chose to promote a white woman to a position that she sought. Because we believe that substantial evidence supports the Secretary's conclusion, we deny the petition.

## I. BACKGROUND

Before it was repealed in 1982, the Comprehensive Employment and Training Act (CETA), 29 U.S.C. §§ 801 et seq. (Supp. V 1981), provided for grants of federal funds to certain qualified entities known as "prime sponsors" for providing "job training and employment opportunities for economically disadvantaged, unemployed, or underemployed persons." 29 U.S.C. § 801 (Supp. V 1981).[1]

The Central Iowa Consortium for Employment and Training was established in 1974 by the City of Des Moines, Iowa and eight Iowa counties to function as a prime sponsor under CETA. The consortium agreement delegated responsibility for CETA program operations to its administrative agency, the Central Iowa Regional Association of Local Governments (CIRALG). CIRALG's mission was to place economically disadvantaged persons in temporary, one-year public service jobs funded by CETA or other public programs. Some of the positions in which CIRALG placed its participants were within CIRALG itself. This was the case with Corliss Williams, the petitioner herein.

Williams, who is black, began working for CIRALG in January 1978 as a Planning Technician in the Management Information Systems (MIS) department. This was a temporary position funded by CETA. Soon after starting in that position, Williams made several applications for promotion within CIRALG. The promotion application that is at issue in this case was made in June 1978. At that time, Williams applied for the position of Operations Supervisor in the MIS department. Another CIRALG employee, Eulonda Strompp, also applied for the Operations Supervisor position. Strompp, who is white, had held the position of Associate Employability Planner in the MIS department since July 1977.

The Operations Supervisor position was awarded to Strompp. At first, however, Strompp received the position only on an interim basis pending some final decisions regarding internal reorganization at CIRALG. Strompp then received the job on a permanent basis in October 1978.

Williams filed a written complaint with CIRALG's Equal Employment Opportunities officer. Williams's complaint charged that she was passed over for the promotion because of her race and that she had been denied opportunities for training that would have helped her qualify for the Operations Supervisor position. After a hearing, CIRALG's Review Board issued a decision that Williams was not a victim of race discrimination.

Next, Williams filed a complaint with Regional Administrator of the Department of Labor (DOL) in September 1978. The DOL issued its decision in March 1982 that CIRALG did not discriminate against Williams because of her race. Williams then requested a hearing before an Administrative Law Judge.

In the meantime, Williams was informed that her position as Planning Technician would be terminated on September 30, 1978. Williams then applied for any open position at CIRALG and was promoted in

---

1. CETA was repealed by Pub.L. No. 97–300, § 184(a), 96 Stat. 1357 (1982) and was replaced by the Job Training Partnership Act, 29 U.S.C. §§ 1501 et seq. (1982). However, the repealer did not affect administrative or judicial proceedings pending on October 13, 1982 under CETA. 29 U.S.C. § 1591(e) (1982).

October 1978 to the permanent position of Associate Employability Planner. Williams later resigned from CIRALG in January 1979.

A hearing before ALJ Rhea Burrow was held on June 13, 1984.[2] At the close of the hearing, ALJ Burrow granted the parties 60 days from the filing of the transcript to submit post-hearing briefs. The transcript was filed on July 2, 1984, thus giving the parties until early September to file post-hearing briefs. However, ALJ Burrow issued his decision finding no discrimination on August 23, 1984, before either party had filed post-hearing briefs. Both parties filed motions requesting ALJ Burrow to vacate his decision and allow the parties to submit briefs. In October 1984, ALJ Burrow vacated his decision and extended the deadline for the filing of briefs.

Although ALJ Burrow had decided to vacate his decision and consider post-hearing briefs, Williams filed appeals with both the Secretary of Labor and this court. The Secretary of Labor remanded the case to the Office of Administrative Law Judges and ordered that the parties be permitted to submit post-hearing briefs; this court remanded to the Secretary of Labor for further proceedings as prescribed by the Secretary.

Upon vacating his decision, ALJ Burrow also recused himself from the case because he was retiring. The case was then transferred to ALJ Robert Feldman, who decided in January 1987, without objection by either party, to rehear the case *de novo*.[3]

A hearing before ALJ Feldman was held in April 1987. ALJ Feldman found that Williams made out a prima facie case of discrimination but that CIRALG showed that it had legitimate, nondiscriminatory reasons for choosing Strompp and that Williams failed to show that CIRALG's reasons were pretextual. The Secretary of Labor declined to review the ALJ's decision, thus rendering that decision final.

Williams now petitions for review, arguing that the ALJ's decision is not supported by substantial evidence and that the ALJ's decision was affected by his bias against her.[4] We deny the petition.

## II.  DISCUSSION

### A.  Race Discrimination

Section 132(a) of CETA tracks Title VII of the Civil Rights Act of 1964 in prohibiting discrimination against CETA participants. That section provides:

> No person in the United States shall on the ground of race, color, religion, sex, national origin, age, handicap, or political affiliation or belief be excluded from participation in, be denied the benefits of, be subjected to discrimination under, or be denied employment in the administration of or in connection with any program or activity funded in whole or in part with funds made available under this chapter.

29 U.S.C. § 834(a) (Supp. V 1981). In reviewing an ALJ's finding regarding whether there has been a violation of CETA's anti-discrimination provision, we apply the "substantial evidence" standard pursuant to section 107(b) of CETA, which provides:

> The findings of fact by the Secretary, if supported by substantial evidence, shall be conclusive, but the court, for

---

2.  A partial explanation for the two-year delay between the time of the DOL's final decision and the time when a hearing was held before an ALJ is that the ALJ initially remanded the case to the Regional Director of the DOL for a determination of the proper parties to be named in the DOL's final decision.

3.  The record does not indicate precisely when the case was transferred to ALJ Feldman. However, it does indicate that it had been transferred by November 1985. In the approximately four years between the time of ALJ Burrow's recusal and the time of the second hearing before ALJ Feldman, Williams's attorney made numerous inquiries regarding the status of the case to the Department of Labor, the Office of Administrative Law Judges, and a member of Congress. He was consistently assured that the case was being taken care of, but never received a specific explanation for the delay.

4.  CIRALG and the Central Iowa Employment and Training Consortium have intervened in support of the Secretary's decision. The Central Iowa Employment and Training Consortium was established in 1980 and is the successor agency of the Central Iowa Consortium for Employment and Training, the original prime sponsor.

good cause shown, may, in whole or in part, set aside the findings of the Secretary or remand the case to the Secretary in whole or in part to take further evidence, and the Secretary may thereupon make new or modified findings of fact and may modify the previous action, and shall certify to the court the record of the further proceedings.

29 U.S.C. § 817(b) (Supp. V 1981).

█ Applying this standard, we believe that there is substantial evidence supporting the Secretary's determination that CIRALG had legitimate, nondiscriminatory reasons for choosing Strompp over Williams for the Operations Supervisor position. Substantial evidence supports the Secretary's claim that although Williams had the minimum qualifications required for the position, Strompp was better suited for it because of her employment history.

Strompp joined CIRALG in July 1977 as an Associate Employability Planner in the MIS department and Williams began at CIRALG in January 1978 as a Planning Technician in the same department. In the hierarchy of positions in the MIS department, the position of Operations Supervisor is the top-ranking position and is followed in descending order by the positions of Associate Employability Planner and Planning Technician. Thus, it is clear that when Williams and Strompp competed for the Operations Supervisor position, Strompp outranked Williams in terms of both the length of her service at CIRALG and the level of responsibility involved in her job at CIRALG.

The evidence also indicates that Strompp performed many of the duties of the Operations Supervisor even while she served as Associate Employability Planner because of the then-Operations Supervisor's repeated absences. Strompp had had occasion to become familiar with the demands of the Operations Supervisor position and had actually demonstrated her ability to handle the job because her supervisor's absences necessitated her assuming some of his duties. In addition, the record indicates that Strompp's work history prior to her tenure at CIRALG was strong and included extensive supervisory experience.

Williams claims that Strompp did not possess the minimum qualifications for the job in that she lacked a college degree. It is true that Williams has more formal education than Strompp; Williams has a Bachelor's degree and 36 graduate hours while Strompp has only one semester of college credit and a teacher's certificate. However, Williams's claim that a college degree was required for the Operations Supervisor position is not supported by the record. The vacancy notice issued by CIRALG when the position opened indicated that applicants should have either a college degree and four years of relevant work experience or any combination of work and education in which one year of education counts as one year of work experience. When Strompp applied for the Operations Supervisor job, she had over 13 years of relevant work experience and thus easily met the job's minimum requirement in this regard.

Williams further argues that CIRALG's executive director, who made the ultimate decision, never even seriously considered her as a candidate and that this is evidence that CIRALG's stated reason for choosing Strompp is pretextual. Yet, evidence was presented that the executive director personally compared Williams's qualifications with Strompp's and concluded after that comparison that Strompp was the stronger applicant.

Regarding Williams's claim that CIRALG denied her training opportunities that were provided to Strompp, the ALJ found that Williams actually had opportunities to sign up for training and did not avail herself of them. We consider this finding to be supported by substantial evidence and also note that, in any event, it does not appear that CIRALG placed any significant weight on Strompp's training experience in promoting her over Williams. Rather, it appears that CIRALG's primary reason for promoting Strompp was that Strompp had worked closely with the previous Operations Supervisor, had actually performed

some of his duties, and had demonstrated her competence in this position.

We are convinced that CIRALG's preference for Strompp was based on merit alone and not on an intent to exclude Williams because of her race. We have considered all of Williams's arguments regarding CIRALG's intent to discriminate against her and find them to be unconvincing. As the ALJ and every other factfinding body that has considered Williams's complaint have found, CIRALG chose Strompp for the Operations Supervisor job for legitimate, nondiscriminatory reasons and thus did not violate CETA's antidiscrimination provision in giving her the promotion.

### B. ALJ Bias

 When Williams sought review of the ALJ's decision with the Secretary of Labor, she also alleged that the lengthy delay that occurred in this case after it was transferred to ALJ Feldman was a result of ALJ Feldman's bias against her. She requested the Secretary to review ALJ Feldman's case assignments in order to compare his treatment of her case with his treatment of other cases. The Secretary denied that request, and Williams now claims that that denial was error. She claims that the delay is presumptive evidence of the ALJ's bias against her and his intent to "aggravate" her.

Although Williams is fully justified in complaining that a final decision in this case has been a long time coming, her claim that the most recent delay was an effort to "aggravate" her and shows bias against her is simply unfounded. Williams has not identified any conduct on ALJ Feldman's part that suggests that he was biased; rather, she claims that the delay alone shows his bias. Undoubtedly, the delays in this case aggravated everyone involved. But Williams has not provided this court with any reason to believe that the delay was designed to harass her in particular. Because Williams offers nothing more than conclusory allegations of ALJ Feldman's bias, we reject her argument and do not give it further discussion. *See Ouachita Nat'l Bank v. Tosco Corp.,*

686 F.2d 1291, 1300–01 (8th Cir.1982) (stating that a judge is presumed to be impartial and that a party alleging bias bears the substantial burden of identifying specific behavior on the part of the judge showing such bias), *aff'd in pertinent part on rehearing en banc,* 716 F.2d 485, 488 (8th Cir.1983).

### III. CONCLUSION

In sum, we believe that the ALJ's finding that CIRALG had legitimate, nondiscriminatory reasons for choosing Strompp over Williams for the Operations Supervisor position is supported by substantial evidence. Further, we conclude that the record does not support Williams's claim that the ALJ was biased against her. The petition for review is therefore denied.