# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3023

_____

Larry A. Brace,

        Appellant,

    v.

Michael J. Astrue, Commissioner of
Social Security,

        Appellee.

\* Appeal from the United States
District Court for the
Northern District of Iowa.

_____

Submitted: May 13, 2009
Filed: August 27, 2009

_____

Before RILEY, SMITH, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Larry A. Brace appeals the decision of the district court[*] upholding the denial of his application for disability insurance benefits and supplemental security income. We affirm.

_____

[*]The Honorable Jon S. Scoles, United States Magistrate Judge for the Northern District of Iowa, sitting by consent of the parties pursuant to 28 U.S.C. § 636(c).

I.

Brace was born in 1959. From 1987 to 2001, he worked as a product handler for a beverage company in Waverly, Iowa. He was convicted of a drug offense in 2001, and spent the following year in prison. While incarcerated, he was diagnosed with bipolar disorder and prescribed medication. Prison medical staff noted that he was able to maintain "above average" to "excellent" institutional adjustment throughout his imprisonment. Following his release, Brace mowed lawns for a landscaping company during the spring and summer of 2003.

Since then, Brace has been unemployed, and he has received frequent medical attention for bipolar disorder and recurring pain in his legs and feet. In December 2004, Dr. Ann Broderick, one of Brace's primary-care physicians, gave the following opinion on his ability to work:

> He has two major medical conditions that have been contributing to his pain syndromes: diabetic neuropathy and fibromylagia [sic]. He has multiple co-morbidities that make it difficult for him to cope with work. The most important of these illnesses is bipolar disease. His mental impairment makes him completely unable to cope with his physical impairment. This point bears emphasis because of [sic] on the face of it, he is not physically impaired to a degree that would make him unemployable but his refractory bipolar illness and depression make him unemployable.

Dr. Broderick identified specific work-related limitations caused by Brace's physical and mental impairments. According to Dr. Broderick, Brace could not lift more than ten pounds frequently, could not stand for more than ten minutes at a time, and could sit for only about two hours in the course of an average work day. Dr. Broderick gave a similar assessment of Brace's capabilities in October 2006.

Brace applied for benefits under both Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, and Title XVI of that Act, *id.* § 1381 *et seq.*, claiming disability beginning September 30, 2001. Title II provides for the payment of disability insurance benefits to disabled individuals, *id.* § 423(a), and Title XVI provides for the payment of supplemental security income to disabled individuals whose incomes fall below a certain level. *Id.* §§ 1381a, 1382(a). Under both titles, an individual qualifies as disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also id.* §§ 423(d)(1)(A), 1382c(a)(3)(A). The Social Security Administration ("SSA") determined that Brace was not disabled, and denied his application initially and on reconsideration.

Brace requested a hearing before an administrative law judge ("ALJ"), who denied his application in August 2006. The ALJ did not credit Dr. Broderick's opinion that Brace's medical condition rendered him "unemployable." Rather, the ALJ found Dr. Broderick's diagnosis of diabetic neuropathy "questionable," given that some of Brace's other physicians were unsure whether he had the condition. The ALJ also determined that Brace's bipolar disorder was "controlled or controllable by medication," and that any occasion when it was not controlled was "mainly if not entirely" due to medication noncompliance, for which Brace had "no good excuse." The ALJ concluded that Brace was not under a disability, but rather was capable of a wide range of light-to-medium work. Based on the testimony of a vocational expert, the ALJ found that Brace could work as a surveillance systems operator, document preparer, or mail addresser. The SSA's Appeals Council denied Brace's request for review in September 2007, following consideration of additional evidence submitted after the ALJ's ruling. Consequently, the ALJ's opinion became the final decision of the Commissioner.

-3-

Brace sought judicial review of the Commissioner's decision. The district court determined that the ALJ reasonably discounted Dr. Broderick's medical opinion, because her opinion was inconsistent with the record as a whole. Concluding that substantial evidence supported the Commissioner's finding that Brace was not under a disability, the district court upheld the Commissioner's decision to deny Brace's application.

## II.

We review *de novo* the district court's decision upholding the Commissioner's denial of benefits. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007). The Commissioner's finding that Brace was not under a disability is "conclusive" if "supported by substantial evidence." 42 U.S.C. § 405(g); *see id.* § 1383(c)(3). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted). It is "'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.'" *Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).

Brace argues that the Commissioner's decision is not supported by substantial evidence, because the ALJ failed to give controlling weight to Dr. Broderick's assessment of Brace's work-related limitations. Under the SSA's regulations, an ALJ must give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If the opinion fails to meet these criteria, however, the ALJ need not accept it. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006).

Brace focuses on the severity of his *physical* impairments, contending that the ALJ improperly disregarded Dr. Broderick's evaluation of his diabetic neuropathy and fibromyalgia. But Dr. Broderick herself acknowledged that "on the face of it" Brace was "not physically impaired to a degree that would make him unemployable." In her view, Brace's physical impairments "contribut[ed] to his pain syndromes," but the main cause of his inability to work was his "refractory bipolar illness and depression." Thus, Dr. Broderick's assessment of Brace's diabetic neuropathy and fibromyalgia does not aid his cause. Even if her opinion were given controlling weight, it would not support his argument that his physical impairments made him disabled.

Dr. Broderick did ultimately conclude that Brace's *mental* condition significantly limited his ability to work. In light of the other substantial evidence in the record, however, the ALJ reasonably decided not to follow Dr. Broderick's evaluation of the impact of Brace's mental impairment. "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (internal quotations omitted); *see* 20 C.F.R. §§ 404.1530(b), 416.930(b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled . . . ."). Here, the ALJ found that Brace's bipolar disorder was "controlled or controllable by medication," and that any lapses in his mental condition were "mainly if not entirely" due to noncompliance with his prescribed treatment. These findings are adequately supported in the record.

There is substantial evidence that, when taken as directed, the medication Brace was prescribed was successful in controlling his mental illness. In prison, for example, medical staff observed that Brace exhibited "above average" to "excellent" institutional adjustment while on medication for bipolar disorder. After his release, doctors continued to note the effectiveness of his prescribed medication. In August 2004, Dr. Marvin Piburn, a psychiatrist whom Brace had begun seeing the previous month, stated that the goals of the medication – "to help control signs and symptoms of mood disorder" – were "realistically well achieved" in Brace's case. Indeed,

according to Dr. Piburn, the medication had a "reasonably good" effect on Brace's mental condition. Similarly, Dr. Ralph Scott, a psychologist who conducted an independent evaluation of Brace in the spring of 2005, did not rule out the possibility that Brace could succeed in the workplace, provided that he follow "a consistent treatment regimen employing monitoring of medications."

The record supports a conclusion, however, that despite the benefits of taking his medication, Brace often failed to do so. Ronald Larson, the director of a psychiatric clinic at which Brace was frequently treated for bipolar disorder until June 2004, noted that there had been a "breakdown" in the "provider-patient relationship" because of Brace's "lack of cooperation [with his] treatment plan." Dr. Piburn sounded a similar theme in May 2005, noting that Brace "had not been complying" with his prescribed medication, even though it was "very important" that he continue taking it. Around that same time, Brace himself "acknowledged at least some medical noncompliance" to Dr. Scott. On this record, the ALJ reasonably concluded that when Brace's mental condition was not controlled, the cause was "mainly if not entirely" medication noncompliance.

A claimant's noncompliance may be justifiable under certain conditions, *see* 20 C.F.R. §§ 404.1530(c), 416.930(c); *Tome v. Schweiker*, 724 F.2d 711, 714 (8th Cir. 1984), but the ALJ determined that Brace had "no good excuse" for failing to follow the prescribed psychiatric treatment. In particular, the ALJ found that the medication was not unaffordable, that the side effects were not unmanageable, and that "[a]ny notion that [Brace's] 'mental impairment' prevent[ed] him from appreciating the need for medication compliance [was] not very believable." Brace does not challenge these findings in his briefs on appeal (he argues only that there was good cause to discontinue *pain* medications), and we have no reason to question them. *See Hacker*, 459 F.3d at 937 n.2.

We conclude that the ALJ reasonably disregarded Dr. Broderick's opinion because it was inconsistent with substantial evidence that Brace's mental impairment was not disabling, so long as he took his prescribed medication. Dr. Broderick's own notes state that as Brace's primary-care physician, she left the management of his mental illness to his psychiatrists. The record does not establish that Brace was taking his medication during the period when Dr. Broderick concluded that his mental condition was disabling. The ALJ's decision not to credit Dr. Broderick's assessment of Brace's work-related limitations was therefore reasonable in light of the record as a whole. Accordingly, we hold that substantial evidence supports the Commissioner's denial of Brace's application for benefits under the Social Security Act.

The judgment of the district court is affirmed.

_____