# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3630

_____

Sherry E. Perkins,                    *
                                      *
                Appellant,            *
                                      *   Appeal from the United States
        v.                            *   District Court for the Eastern
                                      *   District of Missouri.
Michael J. Astrue,                    *
Commissioner of Social Security,      *
                                      *
                Appellee.             *

_____

Submitted: June 15, 2011
Filed: August 10, 2011

_____

Before MURPHY and SMITH, Circuit Judges, and READE,[1] District Judge.

_____

READE, District Judge.

Sherry E. Perkins applied to the Social Security Administration ("SSA") for disability benefits. After a hearing, the administrative law judge ("ALJ") denied Perkins's application for benefits, concluding that Perkins retained the ability to perform her past relevant work, and was therefore not disabled. The SSA Appeals Council denied Perkins's request to review the ALJ's decision, making the ALJ's decision the final decision of the Commissioner of Social Security. Perkins appealed

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa, sitting by designation.

the ALJ's decision to the district court,[2] and the district court affirmed. Perkins now appeals to this court. We conclude that the ALJ's decision was supported by substantial evidence, and we affirm.

## I. BACKGROUND

### A. Procedural History

On or about January 16, 2006, Perkins completed an application for social security disability benefits, alleging a disability onset date of December 12, 2005. On March 27, 2006, the SSA denied Perkins's application. On April 12, 2006, Perkins filed a request for a hearing before an ALJ. On December 10, 2007, the ALJ held a hearing. On February 26, 2008, the ALJ denied Perkins's claim for benefits. On April 18, 2008, Perkins filed a request for review. On May 29, 2009, the Appeals Council denied review. On July 23, 2009, Perkins appealed to the district court. On September 30, 2010, the district court entered a judgment affirming the ALJ's decision.

### B. Work History

Perkins worked as a full time lace cutter from 1981 to 1994. Perkins then owned and operated a beauty shop from 1994 to 1996. During that time, Perkins worked as a hairdresser and also worked on a factory assembly line. In 1995, Perkins was in a car accident and sustained an injury requiring her to have cervical spine fusion surgery. Perkins was awarded social security disability benefits in about March of 1995. Perkins received a bachelors degree in Human Services in 1999 and began working as the director of volunteer services for a nonprofit organization. In this role, Perkins prepared reports, shopped for events, set up for events, retrieved files, made copies, and returned files. Perkins's social security benefits terminated after nine months of employment. Perkins was employed in this position until 2005. Perkins

---

[2]The Honorable Audrey G. Flessig, United States District Judge for the Eastern District of Missouri.

has not worked full time since 2005, but she has worked part time at a thrift shop that she owns and has taken classes toward a masters degree.

## C.    Medical History

Perkins asserts that her impairments of fibromyalgia, hypertension, gastroesophageal reflux disease ("GERD"), chronic obstructive pulmonary disease ("COPD"), depression, and panic attacks constitute a disability with an onset date of December 12, 2005.  Perkins's medical history is set out in detail in the record, and we need not recount it here.

## II.    DISCUSSION
### A.    Standard of Review

"'We review de novo the District Court's determination of whether substantial evidence on the record as a whole supports the ALJ's decision.'" *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009) (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)).  "'We will affirm the ALJ's findings if supported by substantial evidence on the record as a whole.'"  *Id.* (quoting *Kelley v. Callahan*, 133 F.3d 583, 587 (8th Cir. 1998)).  "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion."  *Id.* (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).  "We must consider evidence that both supports and detracts from the ALJ's decision, but we will not reverse an administrative decision 'simply because some evidence may support the opposite conclusion.'"  *Id.* (quoting *Goff*, 421 F.3d at 789).  "'If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'"  *Id.* (quoting *Goff*, 421 F.3d at 789).

### B.    Perkins's Claims on Appeal

On appeal, Perkins claims that (1) the ALJ failed to give adequate weight to Perkins's treating physician; (2) the ALJ failed to comply with the Commissioner's

policies in evaluating the severity of Perkins's fibromyalgia; (3) the ALJ erred in finding statements not credible and in failing to properly apply the *Polaski*[3] factors; (4) the ALJ erred when he declined to adopt a finding from the vocational expert; and (5) the ALJ is biased. We will address each of these claims, in turn.

### 1.    Perkins's Treating Physician

Perkins argues that the ALJ failed to accord adequate weight to the opinions of her treating physician, Dr. Erik Meidl. "'[A] treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.'" *Medhaug*, 578 F.3d at 815 (quoting *Goff*, 421 F.3d at 790). "'A treating physician's opinion does not automatically control, since the record must be evaluated as a whole.'" *Id.* (quoting *Goff*, 421 F.3d at 790). "'An ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" *Id.* (quoting *Goff*, 421 F.3d at 790) (internal quotation marks omitted).

First, Perkins argues that the ALJ should have given controlling weight to Dr. Meidl's opinion in his July 7, 2007 treatment notes. In these notes, Dr. Meidl stated, "The patient is currently unable to work with her severe psychiatric problems and flare-up of her fibromyalgia and her chronic pain from her prior neck injuries." Appendix at 251. However, "[a] treating physician's opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner to make the ultimate disability determination." *House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007). Thus, the ALJ was not required to give controlling weight to Dr. Meidl's July 7, 2007 opinion.

---

[3]*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

Second, Perkins argues that the ALJ should have given controlling weight to the Medical Source Statement of Ability to do Work-Related Activities ("Medical Source Statement") that Dr. Meidl completed on November 30, 2007. The Medical Source Statement is a form checklist that the SSA considers when determining whether a claimant is able to perform specific work-related activities. On the Medical Source Statement, Dr. Meidl indicated that Perkins has numerous limitations, including: (1) lifting less than five pounds frequently and ten pounds occasionally; (2) standing or walking less than two hours in an eight-hour workday; (3) a requirement to periodically alternate sitting and standing to relieve pain or discomfort; (4) limited pushing or pulling with either her upper or lower extremities; (5) never climbing ramps, stairs, ladders, ropes, or scaffolds; (6) never balancing, kneeling, crouching, crawling, or stooping; (7) limited reaching, handling, fingering, and feeling; and (8) certain environmental limitations, including limited exposure to temperature extremes, dust, vibration, hazards such as machinery and heights, and fumes, odors, chemicals or gases. *See* Appendix at 421-424.

The ALJ found that Perkins has the residual functional capacity to work, but the ALJ recognized that she has several limitations, including: (1) an inability to engage in prolonged or frequent standing or walking; (2) an inability to lift or carry objects weighing more than ten pounds; (3) the need to periodically alternate sitting and standing throughout the workday; (4) the need to avoid repetitive reaching, pushing, or pulling with any of her upper or lower extremities; (5) the need to avoid kneeling, crawling, crouching, stooping, or climbing ropes, ladders or scaffolds; and (6) the need to avoid having concentrated or excessive exposure to dust, fumes, chemicals, temperature extremes, high humidity or dampness, and other typical allergens, pollutants and atmospheric irritants. *See id.* at 22. However, the ALJ declined to give all of Dr. Meidl's opinions in the Medical Source Statement controlling weight, finding that they were "inconsistent with the preponderance of the medical evidence in this record, including [Dr. Meidl's] own treatment notes." *Id.* at 19.

The ALJ then discussed evidence in the record that he found to be inconsistent with Dr. Meidl's opinions in the Medical Source Statement. Specifically, the ALJ noted that Dr. Meidl's notes reflected that Perkins's reports of intense pain were infrequent and that neither of the musculoskeletal pain specialists who saw Perkins suggested that her pain was unmanageable. Further, no tests demonstrated that Perkins has extensive arthritic or neurological damage to any spinal or joint area. The ALJ recognized that Perkins has received only conservative treatments, including a brief course of physical therapy in February of 2006, and she does not require any assistive devices to walk. The ALJ found that the medical evidence established no musculoskeletal impairment impeded her ability to ambulate effectively or perform fine and gross movements effectively on a sustained basis. The ALJ also concluded that Perkins's other chronic conditions were well controlled with medication. Due to these inconsistencies, the ALJ did not adopt Dr. Meidl's opinions in the Medical Source Statement that Perkins could not stand for a total of two hours in an eight-hour work day and that Perkins could not lift ten pounds even occasionally.

Upon reviewing the ALJ's reasons for discounting some of Dr. Meidl's opinions in the Medical Source Statement, we conclude that the ALJ did not err. *See Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009) ("It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes."). In addition to the reasons the ALJ provided, other evidence in the record supports the ALJ's decision. For example, Dr. Meidl opined that Perkins could never climb stairs, but Perkins's testified that she climbed the stairs in her home and could climb 14 stairs or walk for four or five minutes before becoming out of breath. Upon reviewing the entire record, we conclude that there is substantial evidence to support the ALJ's finding that certain opinions in the Medical Source Statement are inconsistent with Dr. Meidl's own treatment notes and other relevant evidence. Consequently, the ALJ was not required to give controlling weight

to those opinions. *Cf. Heino v. Astrue*, 578 F.3d 873, 879-80 (8th Cir. 2009) (declining to give controlling weight to certain opinions of treating physicians).

### 2.      Perkins's Fibromyalgia

Perkins maintains that "[t]he ALJ failed to comply with the Commissioner's policies in evaluating the severity of [her] fibromyalgia." Blue Br. at 20. Perkins's counsel argues that the ALJ who decided Perkins's case "has never granted benefits to any of counsel's firm's clients with fibromyalgia," and that "the ALJ substitutes the medical community's recognition of the disease, the Commissioner's position on the disease, and the Eighth Circuit's precedent on the disease with his own feelings that fibromyalgia either does not exist or can never be disabling." *Id.* at 23-24.

Contrary to Perkins's assertions, however, the ALJ recognized that "Dr. Meidl raised the possibility of fibromyalgia on June 7, 2007," in his treatment notes. The ALJ also acknowledged that Dr. Luvell Glanton, a pain management specialist, diagnosed Perkins with fibromyalgia on October 26, 2007. The ALJ then held,

> The medical evidence establishes that [Perkins] has status-post cervical spine fusion at C5-C6, possible fibromyalgia, carpal tunnel syndrome, mild facet artropathy [sic] at L5-S1, possible mild chronic obstructive pulmonary disease, and hypertension, gastroesophageal reflux disease, anxiety, and depression controlled by medication, but no impairment or combination of impairments that meets or equals in severity the requirements of any impairment listed in Appendix 1, Subpart P, Regulations No. 4.

Appendix at 21.

On appeal, Perkins does not present any evidence or argument that her diagnosis of fibromyalgia constitutes a severe impairment that would prevent her from performing any sustained work activity. Instead, Perkins argues only that the ALJ has a history of denying benefits to people with fibromyalgia. It is clear that the ALJ

thoroughly considered Perkins's symptoms and fibromyalgia diagnosis in his analysis, and nonetheless concluded that Perkins's impairments are not severe enough to be considered disabling. As the district court noted, not every diagnosis of fibromyalgia warrants a finding that a claimant is disabled. "While pain may be disabling if it precludes a claimant from engaging in any form of substantial gainful activity, the mere fact that working may cause pain or discomfort does not mandate a finding of disability." *Jones v. Chater*, 86 F.3d 823, 826 (8th Cir. 1996). Because there is substantial evidence in the record to support the ALJ's findings, we decline to disturb the ALJ's decision on this ground.

### 3.     Credibility and *Polaski* Factors

Perkins argues that the ALJ erred by failing to give adequate weight to Perkins's statements and the statements of her family and a friend. Perkins also argues that the ALJ failed to consider the *Polaski* factors.

Perkins's mother, adult daughter, and a friend of thirty-five years each submitted statements in support of Perkins's application for social security disability benefits. Perkins's mother reported that Perkins could do light chores, but she could not do heavy chores due to pain. Perkins's daughter and friend both reported that Perkins could not work because of pain, anxiety, and depression. At her disability hearing, Perkins testified that she could not work due to her depression, hand pain, and back pain. Perkins reported, among other things, that she has approximately two or three anxiety attacks per month and that she feels exhausted without two or three naps per day.

In *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), the Eighth Circuit Court of Appeals determined that an ALJ cannot reject a social security claimant's subjective complaints of pain solely because they are not fully supported by objective medical evidence. When examining a claimant's subjective complaints, in addition to objective medical evidence and the claimant's prior employment record, an ALJ

must also examine: (1) "the claimant's daily activities"; (2) "the duration, frequency and intensity of the pain"; (3) "precipitating and aggravating factors"; (4) "dosage, effectiveness and side effects of medication"; and (5) "functional restrictions." *Polaski*, 739 F.2d at 1322. "The ALJ may discount complaints of pain if they are inconsistent with the evidence as a whole." *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001). "If the ALJ discredits a claimant's credibility and gives a good reason for doing so, we will defer to its judgment even if every factor is not discussed in depth." *Id.*

Perkins argues that the ALJ only considered one of the *Polaski* factors. Although the ALJ did not go through a step-by-step factors analysis, he did discuss the facts relevant to a proper inquiry into each of the factors. For example, in discussing Perkins's daily activities, the ALJ noted that Perkins testified that she could feed, dress and bathe herself, she prepared her son for school every day, she went grocery shopping, she attended church once a month, and she attended parent teacher conferences at her son's school. The ALJ also noted that, during the period of her alleged disability, Perkins was taking classes toward a masters degree. Although not discussed in the ALJ's decision, the record reflects that, during the period of her alleged disability, Perkins owned her own thrift shop, where she sometimes worked to "help[] out," Appendix at 296, and she also washed dishes, sorted and folded laundry, prepared meals, and occasionally went out to eat.

The ALJ discussed Perkins's reports of pain, and noted that her reports of intense pain were infrequent. With regard to precipitating and aggravating factors, the ALJ recognized that Perkins had cervical spine fusion after she was injured in a motor vehicle accident. The ALJ also noted that Perkins attributed much of her new pain, and aggravation of her old injury, to a tripping accident that took place approximately one week before she stopped working in 2005.

The ALJ also discussed the different treatments and medications that Perkins's physicians prescribed her. The ALJ found that Perkins's various illnesses were well controlled with medication, but Perkins frequently failed to take her medications. The ALJ also found that "[t]here is no documented record of any significant, uncontrollable adverse side effects from medications the claimant takes or has taken." Appendix at 19. The ALJ continued, "Whatever adverse side effects the claimant may have had at various times were presumably in all instances eliminated or at least greatly diminished by simple changes in either the type of medication or the size and/or frequencies of the dosage." *Id.* at 19-20.

"'As is true in many disability cases, there is no doubt that the claimant is experiencing pain; the real issue is how severe that pain is.'" *Riggins v. Apfel*, 177 F.3d 689, 692 (8th Cir. 1999) (quoting *Spradling v. Chater*, 126 F.3d 1072, 1074 (8th Cir. 1997)). After discussing facts relevant to a *Polaski* analysis and considering other evidence in the record, the ALJ concluded that Perkins's statements that her symptoms and limitations were so severe as to prevent the performance of all sustained work activity were not credible. Likewise, the ALJ concluded that the statements of Perkins's mother, daughter, and friend were not entirely credible because, among other reasons, their statements were inconsistent with the record as a whole and were likely influenced by their affection for Perkins. We cannot disturb these findings because they are supported by substantial evidence in the record. *See Jones*, 86 F.3d at 826 ("The ALJ may discount the claimant's allegations of pain when he explicitly finds them inconsistent with daily activities, lack of treatment, demeanor, and objective medical evidence."). Furthermore, the ALJ's determination that Perkins's various illnesses were well controlled with medication is supported by substantial evidence. Such a determination precludes a finding of disability. *See Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) (noting that, "'[i]f an impairment can be controlled by treatment or medication, it cannot be considered disabling'" (quoting *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009))).

### 4. Perkins's Hypothetical

Perkins argues that the ALJ erred when he declined to adopt certain portions of the vocational expert's testimony. Specifically, Perkins notes that the ALJ asked the vocational expert whether missing more than two days of work per month would preclude competitive employment. The vocational expert testified in the affirmative. The ALJ then asked the vocational expert whether it would preclude employment for a person to attend work every day, but arrive late or leave early at least once a week. Again, the vocational expert testified that it would. Perkins also notes that her counsel asked the vocational expert whether someone with all of the limitations Perkins described in her testimony could obtain employment. The vocational expert noted that breaks in attention would make it more difficult to be competitive in the job market, and that "no employer would tolerate the need for naps at that level, at the unskilled level." Appendix at 71.

"'A hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true.'" *Goff*, 421 F.3d at 794 (quoting *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001)). "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt*, 250 F.3d at 625. However, "the ALJ may exclude any alleged impairments that [he] has properly rejected as untrue or unsubstantiated." *Id.*

As discussed above, the ALJ was not required to adopt Perkins's unsupported subjective complaints and self-imposed limitations. Aside from her own testimony, there is no support in the record upon which to base a finding that Perkins's limitations include napping during the work day. Accordingly, the ALJ did not err in declining to include Perkins's self-imposed restrictions in his hypothetical to the vocational expert. Likewise, the ALJ was not required to include other limitations in the hypothetical that he found to be unsupported in the record. Here, the ALJ properly included only those impairments and limitations he found to be supported by the evidence as a whole in his hypothetical to the vocational expert. *See Goff*, 421 F.3d

-11-

at 794; *see also Pearsall v. Massanari*, 274 F.3d 1211, 1220 (8th Cir. 2001) ("The ALJ's hypothetical properly included all impairments that were accepted by the ALJ as true and excluded other alleged impairments that the ALJ had reason to discredit."). As a result, the ALJ's hypothetical to the vocational expert was proper.

### 5.    Bias

Perkins's last claim is that "[t]he ALJ has a known and proven general bias against all Social Security claimants with the same or similar characteristics as [Perkins]."[4]  Blue Br. at 28.  Perkins's counsel maintains that she raised the issue for the first time before the district court because, at the time of Perkins's evidentiary hearing, the ALJ had not decided enough of her firm's cases and she did not "have a large enough pool of decisions . . . from which to conduct a reliable statistical analysis to prove his bias."  *Id.* at 28-29.  Perkins's counsel maintains that her firm has now represented clients in fifty-seven cases before the ALJ and has represented two clients on appeal who had hearings before the ALJ.  Perkins maintains that with these fifty-nine cases, she "has enough decisions from [the ALJ] to compile statistics that prove that [he] has a bias against Social Security claimants who share certain characteristics."  *Id.* at 29.  Perkins's counsel then sets forth statistics, based upon her firm's cases, which she believes demonstrate that the ALJ has a general bias against obese women with fibromyalgia and mental impairments.  Perkins's counsel also cites to the ALJ's approval and denial statistics for 2006, which demonstrate that he had a lower approval rate than other ALJ's in St. Louis, Missouri that year.

---

[4]Perkins's counsel has repeatedly raised this bias claim against this ALJ.  *See, e.g., Bowen v. Astrue*, No. 2:09CV39 DNN, 2010 WL 2653458 (E.D. Mo. June 29, 2010); *Waters v. Astrue*, 2:09CV28 DDN, 2010 WL 2522702 (E.D. Mo. June 16, 2010); *Martin v. Astrue*, No. 2:09CV00033 JCH/DDN (E.D. Mo. May 4, 2010).  The district court has rejected counsel's bias claims in each of these cases.  Perkins's counsel has also apparently lodged a complaint with the SSA alleging the ALJ's bias, but the complaint was unsubstantiated.

"ALJs and other similar quasi-judicial administrative officers are presumed to be unbiased." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011) ("There is a 'presumption of honesty and integrity in those serving as adjudicators.'" (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975))). A claimant bears the burden of producing sufficient evidence to overcome this presumption. *See Williams v. U.S. Dep't of Labor*, 879 F.2d 327, 331 (8th Cir. 1989) (citing *Ouachita Nat'l Bank v. Tosco Corp.*, 686 F.2d 1291, 1300-01 (8th Cir. 1982)).

Perkins argues that statements the ALJ made during the evidentiary hearing demonstrated his bias against her. Specifically, after Perkins testified that her daily routine includes watching the Lifetime channel, the ALJ asked, "And what is the subject matter of that? That's the girl channel." Appendix at 37. Perkins responded, "Women's channel." *Id.* The ALJ then stated, "All right. I'm glad our [vocational expert] is here by telephone. I didn't see those dates, but I could have touched a feminist's nerve there with the girl thing." *Id.* Perkins's counsel did not object to the ALJ's statements.

The ALJ's statements do not demonstrate bias. Even if the statements were sarcastic, it is well established that "'expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women sometimes display' do not establish bias." *Rollins*, 261 F.3d at 858 (quoting *Liteky v. United States*, 510 U.S. 540, 555-56 (1994)). "Rather, [Perkins] was required to show that the ALJ's behavior, in the context of the whole case, was 'so extreme as to display clear inability to render fair judgment.'" *Id.* (quoting *Liteky*, 510 U.S. at 551). Perkins has not made a showing that the ALJ's statements rise to this level.

Perkins also argues that the ALJ has a general bias against obese women with fibromyalgia and mental impairments. To support this position, Perkins's counsel

presents statistics involving fifty-seven claimants that her firm has represented in evidentiary hearings with the ALJ and two appeals after such hearings. Perkins's counsel maintains that the ALJ's lower than average approval rating involving her clients, and especially those clients who are obese women with fibromyalgia and mental impairments, demonstrates that the ALJ has a general bias against claimants with these characteristics. The court disagrees.

In this case, the statistical evidence presented in Perkins's brief is inadequate to establish bias. *See Doan v. Astrue*, 04CV2309 DMS (RBB), 2010 WL 1031591, at *15 (S.D. Cal. March 19, 2010) (finding statistical evidence that ALJ had high rate of denial during a particular time period was insufficient to establish bias without other evidence such as the ALJ's routine misapplication of the law, problematic credibility determinations, or statistics regarding reversal rates); *see also Johnson v. Comm'r of Soc. Sec.*, No. 08-4901, 2009 WL 4666933, at *4 (D.N.J. Dec. 3, 2009) (noting that an ALJ's impartiality should not be judged by statistics of how that judge has previously ruled); *Smith v. Astrue*, No. H-07-2229, 2008 WL 4200694, at *5-6 (S.D. Tex. Sept. 9, 2008) (finding that an ALJ's approval rate of only 7.19 percent was troubling, but insufficient, in and of itself, to show bias). To the extent Perkins's counsel maintains that bias is demonstrated by the forty-eight percent successful remand rate of her firm's appeals from the ALJ's decisions, the Commissioner pointed out in oral argument that the national average remand rate is forty-seven percent. This one percent discrepancy is insufficient to demonstrate bias.

There is no evidence in this case to support a finding that bias impacted the ALJ's decision. Instead, the ALJ held a hearing that lasted over an hour and permitted Perkins to develop a full and fair record. *See Mack v. Chater*, 121 F.3d 712, 1997 WL 488944, at *2 (8th Cir. Aug. 25, 1997) (Table) (finding no bias where the ALJ allowed claimant to develop a full and fair record); *Driggins v. Bowen*, 791 F.2d 121, 123 (8th Cir. 1986) (same); *Isom v. Schweiker*, 711 F.2d 88, 90 (8th Cir. 1983)

(finding no bias where ALJ afforded claimant a fair and impartial hearing). The ALJ's decision was supported by substantial evidence in the record, and we affirm.

## III.    CONCLUSION

The Commissioner's final decision to deny Perkins's application for benefits is affirmed.

_____