# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-2863

_____

Rodney DeWayne Gregory

*Plaintiff - Appellant*

v.

Commissioner, Social Security Administration

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: April 10, 2018
Filed: July 19, 2018
[Unpublished]

_____

Before SMITH, Chief Judge, WOLLMAN and LOKEN, Circuit Judges.

_____

PER CURIAM.

Rodney DeWayne Gregory applied for disability insurance benefits and supplemental security income under the Social Security Act. After Gregory's third administrative hearing, the administrative law judge (ALJ) denied his application for benefits, concluding that Gregory was able to perform "'vocationally relevant' past

employment" despite his severe medically determinable impairments.[1]  The Appeals Council denied Gregory's request for review, and he now appeals from the district court's[2] judgment affirming the denial of benefits.  We affirm.

## I. Background

On October 1, 2010, Gregory applied for disability insurance benefits and supplemental security income, stating that his disability began on August 4, 2010. During the application process, Gregory's reported severe impairments included chronic obstructive pulmonary disease; endocarditis and valvular heart disease; a history of arrhythmia; and prior heart surgeries, including two heart valve replacement surgeries and the placement of a pacemaker.[3]  The bulk of Gregory's appeal focuses on his June 2012 heart surgery, which involved repeat aortic and mitral mechanical valve replacements, an excision of an aortic aneurysm into his left atrium, and the reconstruction of aortic mitral continuity. Following surgery, Gregory continued to experience "a systolic ejection murmur," as well as a continuation of the aortic abscess.

During the administrative hearing, a conflict arose between the testimony of Gregory's treating physician, John F. Best, MD, and the ALJ's medical expert, Joseph R. Gaeta, MD.  Dr. Best's opinion was that Gregory should lift no more than five pounds and should not stand, walk, or sit for more than an hour.  Dr. Best also

---

[1]Gregory appeared before an ALJ on two prior occasions, the first on January 13, 2012, and the second on September 26, 2013.  Both hearings resulted in a remand to a different ALJ.

[2]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

[3]The ALJ also considered Gregory's "positive HIV viral status, hepatitis B, diabetes mellitus, depression, and anxiety[.]"

recommended that Gregory not climb, balance, stoop, kneel, crouch, or bend, and concluded that Gregory had a limited capacity to reach, handle, finger, feel, see, hear, and speak. In a letter to Gregory's attorneys sent shortly after the final administrative hearing, Dr. Best expressed the opinion that "Mr. Gregory has multiple chronic morbidities and chronic disease and is totally disabled." In contrast to Dr. Best's opinion, Dr. Gaeta concluded that Gregory could lift twenty pounds occasionally and ten pounds frequently and had no limitation on standing or sitting.[4] Dr. Gaeta also placed no restrictions on Gregory's ability to stoop, kneel, or crouch, and did not find any impairment in Gregory's gross or fine motor skills.

After assessing the parties' competing claims, the ALJ concluded that Gregory had the residual functional capacity (RFC) to engage in work requiring a light level of physical exertion and did not qualify for benefits. The district court affirmed, explaining that "[s]ubstantial evidence . . . support[ed] the ALJ's RFC determination" and that "[a]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion."

## II. Standard of Review

We review the district court's denial of social security benefits *de novo*. Johnson v. Colvin, 788 F.3d 870, 872 (8th Cir. 2015). We will affirm the ALJ's findings if—when viewing the record as a whole—they are supported by substantial evidence, meaning evidence that is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Cox v. Apfel, 160 F.3d 1203, 1206-07 (8th Cir. 1998). When reviewing the record, we consider both evidence that supports and detracts from the ALJ's decision. Id. at 1207. If substantial evidence exists to support the decision, we will not reverse, even if substantial evidence would have supported a contrary outcome or we would have

_____

[4]Dr. Gaeta placed a three-hour limit on walking.

decided the case differently. Andrews v. Colvin, 791 F.3d 923, 928 (8th Cir. 2015) (quoting Cline v. Colvin, 771 F.3d 1098, 1102 (8th Cir. 2014)).

## III. Discussion

Individuals who are insured for disability insurance benefits are entitled to collect those benefits if they have not attained retirement age, have filed an application for benefits, and have a disability. 42 U.S.C. § 423(a)(1). Disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). To determine whether an individual has a disability, the Commissioner of Social Security engages in the following five-step sequential evaluation:

> (1) whether the claimant is presently engaged in a "substantial gainful activity;" (2) whether the claimant has a severe impairment—one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations . . .; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

Cox, 160 F.3d at 1206 (citing Kelley v. Callahan, 133 F.3d 583, 587-88 (8th Cir. 1998)).

Gregory primarily argues that the ALJ erred at steps two and four by underestimating the impact of the pseudoaneurysm and aortic root abscess on Gregory's health. Gregory asserts that the ALJ erred by giving too much weight to

Dr. Gaeta's opinion and insufficient weight to Dr. Best's opinion, pointing to our precedent that states that "[a] treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight," Jenkins v. Apfel, 196 F.3d 922, 924-25 (8th Cir. 1999) (citing Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir. 1991)), and that "'[t]he opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence.'" Id. at 925 (quoting Kelley, 133 F.3d at 589).

We have also explained that "'[a] treating physician's opinion does not automatically control, since the record must be evaluated as a whole.'" Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Perkins v. Astrue, 648 F.3d 892, 897 (8th Cir. 2011)). Furthermore, "'[a]n ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" Id. (quoting Perkins, 648 F.3d at 897-98). See also Winn v. Commissioner, No.17-1987, 2018 WL 3322247, at *6 (8th Cir. July 6, 2018) ("A treating physician's opinion will be given controlling weight 'if, and only if, it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."'" (quoting Johnson v. Astrue, 628 F.3d 991, 994 (8th Cir. 2011))). Having viewed the record as a whole, we conclude that substantial evidence supports the ALJ's determination that Dr. Gaeta's testimony was consistent with Gregory's medical records. Approximately one month after Gregory's release from the hospital for his second valve replacement surgery, Gregory reported no problems with "palpitations, presyncope, syncope or problems with wound healing." Two months after his release, Gregory's medical records show that he had "done well overall since discharge" and that he had "gotten stronger." At that time, Gregory also denied "any significant breathing difficulties or chest pain." Nearly a year after his release, Dr. Best reported that Gregory's "echocardiogram demonstrates near normal size and normal function."

Dr. Gaeta's medical opinion is supported by Gregory's work history. Before he stopped working, Gregory was employed at a gas station that had gone out of business and had been a caretaker for a man who had passed away. Neither employment ended because of Gregory's physical inability to work. See Milam v. Colvin, 794 F.3d 978, 985 (8th Cir. 2015) (stating that although claimant's long work history supported her "[']subjective complaints of disabling pain,[']" "[']the fact that [she] was laid off from her position, rather than forced out due to her condition'" undercut her claim of disability (quoting Black v. Apfel, 143 F.3d 383, 387 (8th Cir. 1998)).

In contrast, Dr. Best's medical opinion appears inconsistent with the medical records. On November 25, 2014, more than two years after Gregory's second valve replacement surgery and Dr. Best's evaluation that Gregory could not stand, walk, or sit for more than an hour, Gregory reported that he had "been active out deer hunting and not snacking." Furthermore, no evidence supports Dr. Best's conclusion that Gregory has an impaired ability to see, hear, and speak. Given these circumstances, we cannot say that the ALJ erred in weighing the doctors' opinions as he did.

Gregory also argues that the ALJ erred in not explicitly including Gregory's pseudoaneurysm and aortic root abscess in the second step of the five-step sequential evaluation. Our precedent indicates that the failure to list a specific impairment at step two is not an error unless the impairment is "separate and apart" from the other listed impairments. See Gragg v. Astrue, 615 F.3d 932, 939 (8th Cir. 2010) ("The reports of [the experts evaluating claimant] are entirely consistent with the ALJ's determination that [claimant] had a learning disorder, and do not support [claimant's] argument that [the experts] concluded borderline intellectual functioning was a severe impairment separate and apart from a learning disorder."). The ALJ noted that Gregory had "chronic obstructive pulmonary disease (COPD), with concurrent, ongoing tobacco abuse; [a] history of endocarditis/valvular heart disease, status post aortic and mitral valve replacement (2001) and redo procedures (2012); and [a]

history of arrhythmia and pacemaker placement (2012)[.]" Nothing in the record indicates that the pseudoaneurysm and the aortic root abscess are separate and apart from the listed heart health issues that the ALJ considered. Furthermore, the ALJ explicitly noted the pseudoaneurysm later in his opinion.

Gregory's final argument is that the case should be remanded because the ALJ did not determine whether Gregory is unemployable because he would miss too many days of work for medical treatment. Gregory claims that his required regular medical appointments to test his blood thickness would require him to miss two to three days of work per month. This claim has not been substantiated, however, and the record is unclear why Gregory would need to miss an entire day of work to have his blood tested. Given these facts, we cannot conclude that the ALJ's ruling was in error.

The judgment is affirmed.

_____